Jesse Smith, Appellee, v. Laurence Rust, Appellant.

Gen. No. 9,274.

48

Opinion filed April 14, 1941.

STONE & TAYLOR, of Bloomington, for appellant.

HOMER ENGLISH, of Bloomington, for appellee.

MR. JUSTICE RIESS delivered the opinion of the court.

This suit was originally brought before a justice of the peace and was then taken upon appeal to the circuit court of McLean county, wherein the cause was tried before a jury, resulting in a verdict in favor of the plaintiff appellee Jesse Smith and against the defendant appellant Laurence Rust in the sum of $68.75, upon which judgment was entered. From that judgment an appeal was perfected to this court. While the amount in controversy is small, the legal principles involved are of importance.

It appears from the evidence that the defendant appellant Laurence Rust was an automobile dealer in Bloomington, who also conducted a branch salesroom and business in Farmer City, Illinois. Plaintiff appellee Jesse Smith negotiated with defendant for the purchase of a second-hand 1937 model Hudson car, which negotiations resulted in a conditional written sales contract between the parties providing a purchase price of $150 plus $4.50 sales tax, involving a cash payment of fifty dollars therein credited and provisions that the remainder thereof be paid in monthly instalments of $12.75, divided into semimonthly payments on the thirteenth and twenty eighth day of each month. On the day following the execution and signature of the sales contract by the plaintiff and payment by him of the fifty dollars so credited in the contract, the car was delivered to him at Farmer City and driven by him to his home in Bloomington.

Subsequent thereto, the plaintiff Smith made three semimonthly payments as they fell due in the respective sums of $6 on November 14th, $6.75 on November 20th and $6 on December 12th, aggregating $18.75 or a total cash credit of $68.75 on the $150 purchase price of the car, all of which payments were credited on the conditional sales contract. After the delivery of the car to the plaintiff, he kept the same at his home in Bloomington from the date of its delivery and the execution of the above duplicate written contract on October 27, 1939, until January 1940, when the automobile was driven by the plaintiff to the place of business of the defendant in Farmer City and there left with the defendant, and the plaintiff demanded the repayment to him of the $68.75 which he had paid toward the purchase price, which repayment was refused and the suit followed.

It was the contention of the plaintiff that at and subsequent to the time that he signed the sales contract and the car was delivered to him, he demanded and

was orally promised a certificate of title, referred to by the witnesses as a title to the car, the assignment and delivery of which was subsequently refused by the defendant on the ground that the same should not be delivered to the plaintiff certifying the title in him until he had completed his payments under the conditional sales contract or when he applied for an automobile license and registered the car so conditionally purchased by him. Plaintiff stated that he did not desire to take out a license or register the car, but insisted that he was entitled to immediate delivery of the assigned certificate of title and that the same had been promised to him.

The conditional written contract signed by the plaintiff recited among other provisions that "The front and back hereof comprise the entire agreement affecting this order and no other agreement or understanding of any nature concerning same has been made or entered into. I hereby acknowledge receipt of a copy of this order," under which appeared the admitted written signature of the plaintiff purchaser. No provision or reference therein was made to any certificate of title, and the plaintiff made no application for a license and refused to make written application for the transfer of title upon the usual blanks when so requested by the defendant.

During the course of the trial, the defendant repeatedly objected to any evidence concerning the furnishing or failure to furnish the certificate of title by the defendant to the plaintiff as being immaterial upon the issue of rescinding the contract and recovering the amount of $68.75 which had been paid thereon, or the admission of oral testimony varying or adding to the provisions of the written contract, and the record recited that such objections were shown to be interposed as to all evidence in relation thereto, followed by a motion to strike the same, which was ultimately denied by the court.

Motions for a directed verdict in favor of the defendant at both the close of the plaintiff's and defendant's evidence and for judgment notwithstanding the verdict were also overruled by the court, and defendant's motion for a new trial was denied and the judgment entered upon the verdict for $68.75 and costs, from which this appeal is taken.

The appellant assigned error by the trial court in denying each of said motions and in entering said judgment; in the giving and refusal of several instructions by the court; in refusing to hold as a matter of law that the assignment and delivery of the certificate of title to the purchaser was not necessary to constitute a valid and binding sale thereof and allegedly holding under the facts in evidence that the plaintiff was entitled to rescind his contract of purchase and in rendering judgment on the verdict.

Plaintiff contended that the failure and refusal to deliver a certificate of title, which defendant had promised to do, constituted a breach of the contract, which justified its rescission, and upon return of the automobile, the recovery of that portion of the purchase price which had been paid thereon and that the contract was void or voidable on account of failure to comply with regulations of the Uniform Motor Vehicle Anti-Theft Act (secs. 74–93, ch. 95½, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 85.075–85.094]).

Without repeating all of the contentions of the respective parties, it may be stated that defendant strongly insists that all of the terms of the contract were embodied in the signed written contract followed by delivery to and acceptance of the motor vehicle and that the contract could not be altered by oral evidence seeking to show additional terms or different provisions than those set forth in the specific contract containing the express clause that it embodied the entire contract between the parties. The further contention is made that the provisions of the Uniform Sales Act

(secs 1–77, ch. 121½, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 121.05–121.81]) and of the Uniform Motor Vehicle Anti-Theft Act, *supra,* concerning delivery of a bill of sale or certificate of title of or registration as to used cars in no way rendered void or voidable the provisions of the conditional sales contract herein entered into by and between the parties to such contract.

From a careful examination and consideration of the whole of the evidence, we are disposed to hold as a matter of law that under the evidence herein the unambiguous written contract embodied the entire agreement between the parties and that the testimony of witnesses relative to the delivery or nondelivery of the title certificate to the plaintiff was not material to the issues herein and was not competent to alter or add to the express provisions of the written contract, which contained no provision or reference thereto. *Kraft-Phenix Cheese Corp. v. H. B. Smith Machine Co.,* 267 Ill. App. 539.

In the case of *L. B. Motors, Inc. v. Prichard,* 303 Ill. App. 318, 25 N. E. (2d) 129, it is held that although the Motor Vehicle Law and the Uniform Motor Vehicle Anti-Theft Act provide penalties for those persons who do not comply with the provisions thereof, these acts were not intended as recording statutes and did not in any way alter, modify or change the effect of the provisions of the Uniform Sales Act as construed by our courts and that "the object of the legislature in enacting these acts was to protect the public from thefts of automobiles, from the evils arising from the unregulated use, sale and transfer of motor vehicles and from the crime committed by their use."

While no decision of the courts of review in Illinois directly in point is cited by either party, the defendant has referred to a number of cases from other States under somewhat similar statutes wherein it was held in substance not only that such acts were passed to prevent traffic in stolen cars by requiring bill of sale

under penalties as referred to in *L. B. Motors, Inc. v. Prichard, supra,* and declaring it to be unlawful to sell or give away motor vehicles without executing a bill of sale therefor and by providing other procedure for perfecting the transfer and registration of certificate of title, but holding that the contract of sale itself is not unlawful if the same is executed in a manner other than that prescribed in the respective acts, especially where actual delivery of the motor vehicle has been made to the purchaser.

The case of *Commercial Credit Co. v. Schreyer,* 120 Ohio St. 568, 166 N. E. 808, involved the construction and application of somewhat similar legislative acts in Ohio regulating the sale and transfer of motor vehicles, which provided in substance that it was unlawful to sell, convey, give away, transfer, exchange, receive, purchase or obtain any motor vehicle or used motor vehicle within that State except in the manner and subject to the conditions therein provided; declaring it to be unlawful to sell or give away a motor vehicle unless the vendor or donor shall at or before such sale or gift execute a bill of sale in duplicate and deliver both copies to the purchaser, and providing in detail what the bill of sale shall contain and that the same be verified by the seller before a notary public or other officer before delivery. It was further so provided that any bill of sale not verified before delivery "shall be null and void and of no effect in law," required the bill of sale to be filed with the clerk of courts "within three days immediately thereafter" and further provided that no person in said State shall drive or operate a motor vehicle or used motor vehicle upon the public highways thereof without having a bill of sale as defined in the act, etc., and severe penalties in the way of fines or imprisonment were therein enacted for violation of such provisions. The court, in a well reasoned opinion, with one dissent, after collating and discussing authorities, there held that the transfer and

delivery of motor vehicles complying with uniform sales laws, although not complying with anti-theft statutes for transferring motor vehicles, is valid.

In its discussion, the court said that ''The act requires vendors and purchasers of motor vehicles to observe certain prescribed formalities in transferring and registering such vehicles, and imposes severe penalties upon nonobservance. It is therefore in every sense a penal statute, and yet it relates to a subject-matter which is highly respectable and a business which employs more capital and labor than almost any other kind of property or business. The statute does not seek to discourage or limit or control the volume or character of the business, but rather to encourage it by affording additional protection from fraud and theft to those who deal in such property. Being a penal statute, it must be strictly construed. That is to say, it should be construed according to its exact and technical meaning, recognizing nothing that is not expressed, and limiting its application to cases clearly described within the words used. A careful study of the act shows that it does not declare any contract to be unlawful, but that it shall be unlawful to proceed in any except a prescribed way in executing the contract. The authorities divide such statutes into two classes: First, those which forbid certain contracts to be made, or certain acts to be done; and, second, those which prescribe a certain mode and manner of doing the act, or the procedure to be followed in making the contract. The greater weight of authority holds that, if the act or contract is not prohibited, and the act is done otherwise than in the manner prescribed, or if the contract is made in form other than that provided, the unlawful manner may be punished, but the transaction itself is held to be legal.''

It was further there said that ''Ordinarily a contract of purchase and sale of a motor vehicle is not different from a contract relating to any other kind of personal

property. At common law, a motor vehicle can be bought and sold by parol contract. Any statute, therefore, which limits, or prescribes · a different form of contract, or a different procedure, is in derogation of common right and of the freedom of contract, and for that reason the statute is subject to the rule of strict construction.''

It was further pointed out in the opinion that the courts of review of California, Colorado, Iowa, Texas, Minnesota, and Montana have placed a strict construction upon similar legislation and hold the contracts not to be void, even though an omission to comply with the laws is an unlawful act and therefore punishable, and that the States of Kansas, Missouri, New Jersey and Oregon have held to a broader application of their statutes.

The Texas Court of Civil Appeals, in *Shipp Buick Co. v. Tolbert* (Tex. Civ. App.), 296 S. W. 329, held that a note and mortgage given in an exchange of automobiles were not void because in violation of criminal statutes regulating sale of second-hand cars by dealers.

The court's opinion in the Ohio case, *supra,* held in disposing of the pending cause ''that possession of the automobile having been delivered to Seymour, and Seymour having paid part of the purchase price, and having executed and delivered his note and chattel mortgage for the balance, the contract became valid between the parties.''

A distinction should, however, be made between contracts which are for purposes lawful in themselves and those based upon, unlawful purposes such as gambling contracts or those against public policy, which latter class of contracts are void *ab initio* in Illinois. *Brelsford v. Stoll* and citations therein, 304 Ill. App. 222, 26 N. E. (2d) 159.

From an examination of the authorities, we are disposed to hold it to be the general and better considered

rule, having in view the vast importance and volume of the legitimate traffic in automobiles within this State and bona fide contracts in relation thereto, that the Illinois penal statutes regulating the manner of transferring or recording titles are to be strictly construed and are not by their provisions intended to prohibit or render invalid as between the parties contracts involving the bona fide sale and delivery of motor vehicles. The penal statute, while punishing violation of any of its terms in relation to the sale, transfer, delivery and registration of motor vehicles, a business in itself entirely legitimate and neither unlawful nor against public policy, is intended, as its title and context implies, to prevent theft and certain unlawful actions and practices and not to prevent or render illegal the legitimate sale, transfer and delivery of motor vehicles.

In the instant case, an unambiguous written sales contract signed by the purchaser was executed between the parties and the motor vehicle was delivered to the purchaser pursuant to its express provisions. The contract was in writing, was unambiguous, was complete within itself and so recited. There was no provision therein relative to any certificate of title, and we hold that the contract of sale, free from any charge or proof of fraud, was binding upon both parties. As in the case of *Commercial Credit Co. v. Schreyer, supra,* the purchaser of the car and the holder of the subsequent mortgage thereon were protected and the contract was binding as between the parties, and we hold in the instant case that the contract was binding upon the plaintiff herein and could not be rescinded by a mere return of the vehicle and a demand for that portion of the purchase price which had been paid in conformity with the express terms and provisions of the conditional sales contract. The contract itself and the statute in relation thereto provided for and permitted the retention of the title to the

vehicle until complete payment was made in accordance with its terms.

The testimony offered and admitted concerning the procurement of either a license or assignment of certificate of title was therefore neither relevant nor material to the issues before the court, and defendant's motion to exclude the same should have been allowed.

We find that there was no competent evidence in the record proving or tending to prove that any of the provisions of the contract of sale had been violated by the plaintiff and that upon the evidence adduced, the court should have allowed defendant's motion for a directed verdict, and upon its reserved decision and motion therefor, should have entered judgment in favor of the defendant notwithstanding the verdict. We further hold from the state of the record herein that the trial court committed further error in overruling defendant's motion for a new trial.

The cause is reversed and remanded with directions to the trial court to set aside its judgment and enter judgment *non obstante veredicto* in favor of the defendant in bar of suit and for costs.

*Judgment reversed and remanded with directions.*