ALONZO WILLIAM CLAY, Independent Ex'r of the Estate of Erma Wesley Dahl, Deceased, Plaintiff-Appellant, v. WILLIAM A. HARRIS, Defendant-Appellee.

Fourth District   No. 4—91—0821

Opinion filed May 7, 1992.—Rehearing denied June 15, 1992.

Alonzo William Clay, of Pontiac, appellant *pro se.*

Steven D. Ziegler, of Satter, Beyer & Spires, of Pontiac, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, Alonzo Clay, as independent executor of Erma W. Dahl's estate, appeals the Livingston County circuit court's dismissal of his complaint against defendant, William A. Harris, to recover the sale price of a car sold to Harris at an auction and for damages for storing

the car. Clay argues the circuit court judge erred by concluding Harris could rescind their contract. We disagree and affirm.

On August 20, 1989, Clay, as independent executor of the estate of Erma Wesley Dahl, auctioned a 1973 Chevrolet Caprice automobile. Harris successfully bid $4,100 on the car. No announcement was made during the auction about whether a certificate of title to the car would be available. After the auction, Harris' son paid for the car and requested the certificate of title to it. The auctioneer told him Clay had the certificate of title. Harris' son drove the car to Harris' home.

The following day, Harris went to Clay's office to obtain the certificate of title. He discovered Clay did not have the certificate. Clay told Harris that, after looking through the decedent's papers, he could not find the certificate. He offered to try to secure a certificate of title to the car and stated he could apply for a lost title.

When Harris inquired further, Clay told him he did not know how long it would take to secure a lost title, but he would not cash Harris' check for the car until he received the certificate of title. Harris told Clay he needed to use the car on Friday, August 25, for a trip out of State, and if he did not receive the certificate of title by 5 p.m. on this date, he would return the car to Clay. He explained he needed the title to legally drive the car or to obtain a license for the car.

Harris stopped in Clay's office again on Wednesday, August 23, and was told Clay had not located the certificate. Clay rejected Harris' suggestion he consider accepting the second highest bidder's offer for the car. Harris again explained he needed the certificate before 5 p.m., August 25.

Because he had not received the certificate of title shortly before 5 p.m. on August 25, Harris drove the car to Clay's office, parked it, gave the keys to Clay's secretary and indicated to her where the car was parked. Clay testified the car was returned to him in this way on or before August 30 and had since been stored in his garage. Harris' check for the car and other items purchased at the auction had not yet been deposited. Harris retrieved this check from the bank and wrote a new check for other items purchased, less the $4,100 for the car.

Clay received a duplicate certificate of title to the car on September 15, 1989. He requested it sometime after the auction and it was issued by the Secretary of State on September 13, 1989. On September 15, Clay wrote to Harris to tell him he had received the duplicate certificate. Clay also stated that he expected to receive Harris' check for the car shortly. Harris did not respond.

On September 20, 1990, Clay filed a complaint against Harris for the car's purchase price and storage costs. The circuit court denied

Clay's summary judgment motion. At the June 11, 1991, bench trial, the circuit court concluded the parties had entered an oral contract by virtue of Harris' bid on the car and Clay's acceptance of Harris' bid. He also found the contract contained an implied term requiring Clay to deliver the certificate of title to Harris within a reasonable time. The parties were given an opportunity to file memoranda regarding the effect of Clay's failure to deliver a certificate of title with assignment and warranty of title to Harris when the car was given to him.

On July 12, 1991, the circuit court ruled in favor of Harris and dismissed Clay's claim for $4,100 as payment for the car. The judge held the contract between the parties required Clay to deliver to Harris a properly executed certificate of title. Clay's failure to do so when possession of the vehicle was transferred to Harris constituted delivery of nonconforming goods. He further reasoned Harris provided Clay a reasonable time to cure this nonconformity by allowing him five days to obtain the title. Harris could rescind the contract because Clay did not provide title within that time. The judge also denied Clay's request for damages amounting to $770 for storing the car. Clay's post-trial motion was also denied. This appeal followed.

Clay raises numerous arguments why the trial court erred by concluding Harris could rescind his agreement to purchase the car. He begins by providing this court a long explanation about why his case is important. Each case reviewed by this court is decided based on the merits. Although the bases for Clay's additional arguments are difficult to discern, we will address each as fully as possible.

Clay argues the Illinois Vehicle Code (Vehicle Code) (Ill. Rev. Stat. 1989, ch. 95½, par. 1—100 *et seq.*) should not override general sales principles. He directs us to section 2—401(2) of the Uniform Commercial Code—Sales (Commercial Code) (Ill. Rev. Stat. 1989, ch. 26, par. 2—401(2)), which states title to goods sold passes to the buyer when the seller physically delivers the goods. He also directs us to the traditional rule that a sale at a public auction is final and title to the property passes to the bidder once the auctioneer strikes off the item. See Ill. Rev. Stat. 1989, ch. 26, par. 2—328(3).

However, the trial court indicated the question of when title to the vehicle passed to Harris was not the guiding factor. We agree. The issue raised is whether, pursuant to the parties' agreement, an implied term was that Clay deliver a certificate of title to Harris.

Clay contends their contract did not require him to deliver a certificate of title to Harris. He notes he did not discuss this topic with any bidder before the auction, and the topic was not announced during the auction. The court did not, however, find there was an express agree-

ment between the parties. Rather, Clay's obligation to deliver the title to Harris was implied. We note Clay's actions intimate he presumed he was selling the car with the certificate of title. He testified he thought the certificate was within the papers he had given to the auctioneer. He also told Harris the auctioneer had the certificate. When Harris told Clay the auctioneer did not have it, Clay told Harris he would not cash Harris' check until the certificate was replaced through the Secretary of State.

Harris argues the trial court correctly concluded the parties' agreement contained an implied term requiring Clay to deliver a properly executed certificate of title to Harris when he took possession of the car. In the alternative, the title, at a minimum, had to be delivered within a reasonable time after Harris took possession of the car. Clay's failure to meet this implied term constituted delivery of nonconforming goods and permitted Harris to rescind the contract.

Clay seems to argue a sale completed at an auction cannot be rescinded based on provisions of the Vehicle Code. He bases this argument on cases which have concluded that because the Vehicle Code is penal in nature it must be strictly construed. See *Smith v. Rust* (1941), 310 Ill. App. 47, 54, 33 N.E.2d 723, 726.

*Smith* states the following as to strict construction of the Vehicle Code: "[I]t should be construed according to its exact and technical meaning, recognizing nothing that is not expressed, and limiting its application to cases clearly described within the words used." (*Smith*, 310 Ill. App. at 54, 33 N.E.2d at 726.) The Vehicle Code clearly obligated Clay to apply for a replacement title to the car before selling it to Harris.

It states in relevant part:

> "If an owner transfers his interest in a vehicle, other than by the creation of a security interest, at the time of the delivery of the vehicle he shall execute to the transferee an assignment and warranty of title in the space provided on the certificate of title, or as the Secretary of State prescribes, and cause the certificate and assignment to be mailed or delivered to the transferee or to the Secretary of State." Ill. Rev. Stat. 1989, ch. 95½, par. 3–112(a).

It also provides:

> "A transferor of a vehicle, other than a dealer transferring a new vehicle, shall deliver to the transferee at the time of the delivery of possession of the vehicle the properly assigned certificate of title of this vehicle." Ill. Rev. Stat. 1989, ch. 95½, par. 3–115(c).

Harris also argues that because parties to a contract are presumed to know existing law which relates to their agreement, the provisions delineated above became implied terms of the parties' contract which Clay was presumed to know. He cites this court's previous ruling in *Lehmann v. Arnold* (1985), 137 Ill. App. 3d 412, 422, 484 N.E.2d 473, 480, as support. Clay's failure to meet these requirements amounted to delivery by him of nonconforming goods.

Clay again directs us to *Smith* and argues purchasers have not been permitted to interject the Vehicle Code into their contracts with sellers of vehicles. *Smith* is distinguishable from this case, however, because it found the parties' entire agreement was embodied in an unambiguous written agreement. The seller was a car dealer. The writing provided for the seller's retention of the certificate of title until the buyer completed payments. (*Smith*, 310 Ill. App. at 49-50, 33 N.E.2d at 724.) Unlike *Smith*, the issue in this case relates to an oral agreement. The circuit court in this case concluded the agreement between Clay and Harris included the implied condition the certificate of title would be provided to Harris by Clay when Harris was given possession of the car or within a reasonable time after.

Clay also directs us to an earlier ruling by this court which we find distinguishable. *Pageanas v. Mixon Motor Co.* (1951), 344 Ill. App. 446, 101 N.E.2d 280, involved a written contract to purchase between a car dealer and a buyer in which the parties agreed the finance company would retain the certificate of title, which was written in the buyer's name, until the vehicle was paid for in full.

There was no written contract between Clay and Harris. Moreover, the Vehicle Code provisions which we find relevant to this case exclude contractual agreements involving the creation of a security interest, as in *Pageanas*, and the transfer of an interest in a car by a car dealer, as in *Smith*. Ill. Rev. Stat. 1989, ch. 95½, pars. 3—112(a), 3—115(c); *Pageanas*, 344 Ill. App. at 448, 101 N.E.2d at 281; *Smith*, 310 Ill. App. at 49, 33 N.E.2d at 724.

■ Clay argues even if the Vehicle Code applies to the contract between him and Harris, their sales transaction is excluded pursuant to section 3—114(c), which states:

> "If the interest of an owner in a vehicle passes to another under other provisions of the Probate Act of 1975, as amended, and the transfer is made by a representative or guardian, such transferee shall promptly mail or deliver to the Secretary of State, the last certificate of title, if available, and a certified copy of the letters of office or guardianship, and an application for certificate of

title. Such application shall be made before the estate is closed."
Ill. Rev. Stat. 1989, ch. 95½, par. 3—114(c).

Clay argues this provision relieves him, as the representative of Dahl's estate, from any responsibility for executing or delivering anything to Harris when the title certificate was not available. He contends this provision provided a way for Harris to obtain a certificate of title in his own name.

Section 3—114(c) applies only when the interest of the owner passes under other provisions of the Probate Act. Here, the car did not pass under the Probate Act, but was sold by Clay as executor of Dahl's estate.

Clay next contends in his reply brief that section 3—112(e) of the Vehicle Code precludes a finding in favor of Harris. He directs us to the language, "[e]xcept as provided *** as between the parties." (Ill. Rev. Stat. 1989, ch. 95½, par. 3—112(e).) He seems to argue Harris could not rescind the contract because the parties intended for title to the car to pass to him immediately.

He also directs us to cases in which courts have ruled title to a car passed to the transferee although the transferee had not secured a certificate of title. (See *State Farm Mutual Automobile Insurance Co. v. Lucas* (1977), 50 Ill. App. 3d 894, 898, 365 N.E.2d 1329, 1332.) Ownership of the car is not at issue. The issue, again, is whether the car sold by Clay to Harris conformed with what the parties intended.

The Vehicle Code obligated Clay to provide Harris a properly executed certificate of title. The trial court correctly concluded the parties' contract implied a properly executed and assigned certificate of title would be delivered to Harris within a reasonable time after the auction. The judge reasoned that a person who buys a car at an auction has a reasonable expectation to receive the car and be able to lawfully operate it within a reasonable time.

Their agreement did not include a specific time at which this would occur. Where the time for performance of a particular obligation is not specified, a reasonable time to perform is implied. (*Guel v. Bullock* (1984), 127 Ill. App. 3d 36, 42, 468 N.E.2d 811, 816.) The trial court concluded five days, the length of time Harris waited for delivery of the certificate of title before he returned the car to Clay, was reasonable. The judge also concluded requiring Harris to wait more than 20 days from the date he bought the car to receive the certificate of title from Clay would not have been reasonable.

Whether an oral contract exists and the nature of its terms and conditions, including what constitutes a reasonable time for performance, are questions of fact and should not be disturbed unless contrary to the

manifest weight of the evidence. *Howard A. Koop & Associates v. KPK Corp.* (1983), 119 Ill. App. 3d 391, 400, 457 N.E.2d 66, 73.

The trial court's conclusion should not be disturbed. Harris may have been significantly prejudiced had he been required to wait more than 20 days for the certificate of title. Harris testified he purchased the car to use it within that same week to travel out of town. The lack of the certificate of title precluded him from doing so. Moreover, contrary to Clay's argument, Harris was unable to obtain a registration for the vehicle without the certificate of title. In order to apply for and obtain a new registration of a car, Harris had to have proof of ownership, the certificate of title. Ill. Rev. Stat. 1989, ch. 95½, pars. 3—100, 3—405(a), 3—502.

The cases cited by Clay as supporting his argument that a buyer can independently seek registration of a recently purchased car do not stand for this position. Rather, these cases address whether title can pass without the certificate of title passing. (*L.B. Motors, Inc. v. Prichard* (1940), 303 Ill. App. 318, 321, 25 N.E.2d 129, 130; *Lucas*, 50 Ill. App. 3d at 898, 365 N.E.2d at 1332.) Again, this is not the issue we address. Clay delivered to Harris, through Harris' son, who drove the car home, a nonconforming item by failing to deliver the certificate of title within a reasonable time after Harris took possession of the car.

■ Under the Commercial Code, a buyer can revoke acceptance of an article the nonconformity of which substantially impairs the article's value if the buyer accepted the nonconforming item on the reasonable assumption that its nonconformity would be cured and it was not timely cured. (Ill. Rev. Stat. 1989, ch. 26, par. 2—608(1)(a).) Harris accepted the car without the properly executed certificate of title. It was reasonable for him to assume, based on the auctioneer's representation, the nonconformity would be timely cured. This, however, did not occur.

The circuit court judge reasonably viewed the parties' oral contract as including the implied condition that Clay would provide the certificate of title to Harris when he was given possession of the car or within a reasonable time after. The court did not err by concluding Harris could rescind his purchase of the car due to Clay's failure to seasonably cure the defect, the lack of title, in the vehicle.

Affirmed.

GREEN, P.J., and McCULLOUGH, J., concur.