U S G CORPORATION *et al.*, Plaintiffs-Appellees, v. STERLING PLUMB-ING GROUP, INC., Defendant-Appellant.

First District (2nd Division)   No. 1—92—2797

Opinion filed April 27, 1993.

Michael T. Hannafan & Associates, Ltd., of Chicago (Michael T. Hanna-fan, of counsel), and Quarles & Brady, of Milwaukee, Wisconsin (Stuart Par-sons, of counsel), for appellant.

Kirkland & Ellis, of Chicago (Steven J. Harper, P.C., and David A. Coulson, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiffs, U S G Corporation and U S G Industries, Inc. (collec-tively USG), sought to recover damages from defendant, Sterling Plumbing Group, Inc. (Sterling), for breach of contract. The circuit court decided the case on the parties' cross-motions for summary judgment, granting USG's motion and denying Sterling's cross-mo-

tion. Sterling seeks reversal and remandment with directions to enter judgment in its favor or, alternatively, for reversal and remandment for trial. The issue presented for review is whether the contract clearly or ambiguously contemplated either that Sterling purchase slow-moving inventory assets based upon values calculated in accordance with generally accepted accounting principles (GAAP), or that Sterling pay nothing for such assets because they were not turned over within a 12-month period. For reasons which follow, we affirm.

In 1988, USG entered into an "ASSET PURCHASE AGREEMENT," through which it sold all assets owned by its Kinkead Division to Sterling, including all Kinkead's inventory and supplies used in its manufacturing business and sales of shower doors and related items. The contract contained a merger clause which declared that it was the "entire agreement" between the parties, superseding agreements, undertakings, and "all prior discussions, *** written or oral, of any and every nature with respect thereto."

Under the contract, USG was to prepare a "Preliminary Closing Date Net Asset Statement" (Statement) subsequent to closing, in accordance with GAAP. The only allowable deviations or modifications from GAAP were described in schedule 4.04 to the contract. Schedule 4.04 required that, for the statement, USG will "determine appropriate inventory reserves necessary to provide annual inventory turnover of at least one turn per year based on the previous 12 months' experience" and that obsolete inventories be reflected at net realizable value or, alternatively, adequate reserves will be provided therefor. Both parties agree that there were three categories of inventory for purposes of the sale: current, slow-moving and obsolete. Schedule 4.04(b) does not mention slow-moving inventory.

USG's statement calculated a value offset for slow-moving inventory asset reserves based upon "the lower of cost or market" as required by GAAP. The final contract amount that Sterling was required to pay reflected this value of the slow-moving assets. Sterling claimed that slow-moving inventory should not have been assigned *any* value for purposes of the acquisition, but otherwise did not identify any computational error in calculation of value. Nor did Sterling aver that the GAAP value assigned to slow-moving inventory, if a value was to be assigned, was incorrect.

The resulting dispute created a $416,000 issue that the circuit court resolved in USG's favor, as follows:

"8. The Court finds that paragraph 2.03 of the Asset Purchase Agreement dated November 9, 1988 is clear and unambiguous that 'the [Statement] shall be prepared in accordance

with [GAAP], with only such deviations or modifications as are described in Schedule 4.04....'

9. That schedule 4.04 is clear and unambiguous.

10. That the slow-moving inventory: a) was not given a zero value in the contract, b) was not included in the specific list of exceptions or modifications to GAAP in Schedule 4.04 and, c) was not included within the current inventory without value.

11. The Court finds that the slow-moving inventory is to be valued in accordance with [GAAP] as set forth in paragraph 2.03 of the Asset Purchase Agreement."

A final order disposing of all issues in the case was entered on July 16, 1992.

## I

The standard of appellate review is *de novo* in summary judgment appeals such as this. (*Kousins v. Anderson* (1992), 229 Ill. App. 3d 486, 593 N.E.2d 1095.) A contract construed as a matter of law by the circuit court may be independently construed by a reviewing court, unrestrained by the circuit court's judgment. *Marcy v. Markiewicz* (1992), 233 Ill. App. 3d 801, 809-10, 599 N.E.2d 1051; *Berkeley Properties, Inc. v. Balcor Pension Investors II* (1992), 227 Ill. App. 3d 992, 998, 592 N.E.2d 63; *Zale Construction Co. v. Hoffman* (1986), 145 Ill. App. 3d 235, 240, 494 N.E.2d 830, *appeal denied* (1986), 112 Ill. 2d 598 (*Zale*).

The principal objective in construing a contract is to determine and give effect to the intention of the parties at the time they entered into the contract (*Zale*, 145 Ill. App. 3d at 241; *Ancraft Products Co. v. Universal Oil Products Co.* (1981), 100 Ill. App. 3d 694, 427 N.E.2d 585). An ambiguity is not created by the mere fact that, as here, the parties do not agree upon an interpretation. (*Zale*, 145 Ill. App. 3d at 241; *Harlem-Irving Realty, Inc. v. Alesi* (1981), 99 Ill. App. 3d 932, 425 N.E.2d 1354.) Whether or not the contract is ambiguous is an issue of law. (*Ancraft*, 100 Ill. App. 3d at 697.) A court may consider extrinsic evidence provisionally for the limited purpose of determining whether an ambiguity exists. *U I D C Management, Inc. v. Sears Roebuck & Co.* (1986), 141 Ill. App. 3d 227, 230, 490 N.E.2d 164.

Sterling contends that the purchase agreement does not allow USG to assign any salvage value to slow-moving inventory because the express language of schedule 4.04 required zero valuation for slow-moving inventory, and there is no language in the agreement that supports treating slow-moving inventory in the same manner as obsolete inventory. Sterling maintains further that paragraph 2.03 of

the purchase agreement, which states that GAAP shall apply except for "such deviations or modifications as are described in Schedule 4.04," sanctions the 12-month turnover definition of inventory as a deviation or modification with respect to GAAP.

Schedule 4.04(b) required that USG set up "appropriate inventory reserves necessary to provide annual inventory turnover of at least one turn per year based on the previous 12 months' experience." Sterling insists that these reserves were not in accordance with GAAP because GAAP require inventory to be valued at the lower amount of either cost or market value, not on the amount of turnover in a year. Sterling concludes, therefore, that the reserves were specific deviations from GAAP, which allegedly were designed to reflect the parties' agreement that Sterling would pay only for current and obsolete inventory, but was required to pay nothing for slow-moving inventory.

Paragraph 2.03 of the agreement sets forth the procedure for valuing all assets that Sterling was buying:

> *"Post-Closing Adjustment.* As soon as practicable after the Closing, [USG] shall prepare *** a [S]tatement of net assets for the Division as of the end of business of the Closing Date (the [Statement]). The [Statement] shall be prepared in accordance with [GAAP], with only such deviations or modifications as are described in Schedule 4.04 hereto."

Schedule 4.04(b), as incorporated, lists the only exception to the application of GAAP in the preparation of the Statement. Schedule 4.04 does not mention slow-moving inventory. In fact, slow-moving inventory was originally included in the second clause of schedule 4.04(b), but was stricken out of the clause by Sterling itself. It is clear from paragraph 2.03 of the agreement, therefore, that slow-moving inventory, not having been listed specifically in schedule 4.04(b), was to be valued in accordance with GAAP, which is what USG did here.

■ Sterling's assertion, that the circuit court erred in concluding that slow-moving inventory was not included in the specific list of exceptions or modifications to GAAP as set forth in schedule 4.04, is based upon its reading that inventory reserves should be established to exclude any value for inventory that does not turn at least once in the 12-month period with the only exceptions being new product lines, safety shoes or repair parts. Therefore, because no "value" was set for slow-moving inventory, such inventory was of no value. Such an interpretation, however, would require that the setting of a 12-month turnover period for valuing current inventory carried with it the requirement that GAAP be ignored in valuing slow-moving inventory,

which the parties themselves did not provide for. The practical effect would be to require Sterling's payment only for the most current assets and for the least current assets, but to pay nothing for the middle category.

To accept Sterling's construction would necessitate that section 2.03 be considered nugatory or ignored. Under New York law, which applies under the agreement, and Illinois law as well, a court will not interpret a contract in a manner that would render a provision meaningless (*Corhill Corp. v. S. D. Plants, Inc.* (1961), 9 N.Y.2d 595, 176 N.E.2d 37, 217 N.Y.S.2d 1; *Trump-Equitable Fifth Avenue Co. v. H.R.H. Construction Corp.* (1985), 106 A.D.2d 242, 485 N.Y.S.2d 65; *Berkeley Properties, Inc. v. Balcor Pension Investors II* (1992), 227 Ill. App. 3d 992, 592 N.E.2d 63), and we decline to do so here.

## II

■ Sterling asserts that if the circuit court found the language of the agreement ambiguous, it improperly resolved the ambiguity in favor of USG because the extrinsic evidence allegedly shows that the agreement was meant to exclude payment for slow-moving inventory. We need not consider this argument since we find, in our independent analysis, no ambiguity in the contract terms to justify consideration of extrinsic evidence. We note, however, that the circuit court also found the contract terms clear and unambiguous, and in its analysis assumed any ambiguity *arguendo*. As Sterling represented to the circuit court before judgment on the respective motions, we also find no genuine triable, material issue of fact as would foreclose the grant of summary judgment. (*Montes v. Hawkins* (1984), 126 Ill. App. 3d 419, 466 N.E.2d 1271.) Raising such an issue, as here, at the brink of defeat on appeal, contravenes the rule that issues not presented for determination by the circuit court will not be considered on review. *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417; *In re Marriage of Rodriguez* (1989), 131 Ill. 2d 273, 545 N.E.2d 731.

For the reasons set forth above, we affirm the grant of summary judgment to USG and the denial thereof to Sterling on its cross-motion.

Affirmed.

McCORMICK, P.J., and SCARIANO, J., concur.