GORDON MEYER *et al.*, Plaintiffs-Appellants, v. MARILYN MIGLIN, INC., Defendant-Appellee.

First District (2nd Division)   No. 1—94—0664

Opinion filed June 30, 1995.—Rehearing denied July 28, 1995.

David L. Clark, of Chicago, for appellants.

Flamm, Teibloom & Laytin, Ltd., of Chicago (Richard Orlikoff, of counsel), for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

In 1989, defendant Marilyn Miglin, Inc., a cosmetic and fragrance company, issued a purchase order whereby it agreed to purchase from plaintiffs Gordon Meyer and Gordon Meyer Photography, Inc. (hereinafter plaintiff), the right to use a redesigned or retouched

photograph for use in the promotion of a new perfume it was marketing. When defendant did not use a retouched version of the photograph, it cancelled the order and refused to remit payment.

On October 15, 1993, plaintiff filed his amended complaint, alleging that defendant "vexatiously and unreasonably refused" to make payment under the contract. The purchase order, typed on defendant's form and initialed by its chairman, Lee Miglin, stated:

> "Exclusive, unlimited usage rights to Marilyn Miglin, Inc. to Redesigned/Retouched version of Gordon Meyer's 'Flying Nude.' Gordon Meyer retains all exclusive rights to original transparency."

In its "Answer and Affirmative Defenses to Amended Complaint," defendant claimed that it was a condition of the purchase order that a satisfactory retouched version of the photograph come into existence before defendant would be obligated to pay for the rights to use the photograph. When defendant could not successfully create a satisfactory version of the photograph, it cancelled the purchase order. Defendant also asserted as an affirmative defense that the purchase order was not an enforceable contract because: it was not signed by the parties; its terms were so vague that the subject matter of the contract could not be determined; essential terms were omitted from the order, and the terms of the order were so inconsistent and ambiguous that the parties' intent could not be discerned.

The following facts were gleaned from the evidence presented at the parties' bench trial. When, in 1989, defendant began developing marketing strategies for its new perfume, "Destiny," it hired Chris Hayano, a free-lance art director, to design the packaging, logo, bottle graphic, and other marketing products. He determined that plaintiff's photograph, "Flying Nude," would be desirable for the project after seeing it in a trade magazine advertisement for plaintiff's photography studio. The concept was approved by defendant, which subsequently attempted to obtain the rights to the photograph from plaintiff. Defendant wanted to use the photograph after retouching it to remove some of the detail and definition from the subject of the photograph. Plaintiff and defendant could not agree on a price for unlimited rights to the photograph; however, they eventually agreed that defendant could purchase exclusive rights to a retouched version of the photograph for $15,000, while plaintiff retained exclusive rights to the original transparency.

Plaintiff testified that he was contacted by Chris Hayano regarding defendant's use of his photograph, "Flying Nude," early in 1989. Negotiations regarding defendant's use of the photograph began in March 1989; plaintiff received defendant's purchase order, dated May

17, 1989, a few days after it was issued. He testified that the purchase order encompassed all of the terms of his agreement with defendant. Plaintiff had delivered the original transparency to defendant before receiving the purchase order; he testified that he often "go[es] ahead of the paperwork" with clients so that they can meet their deadlines and he can increase his chances of getting the job. He believed that defendant had sent out the transparency to have dye transfers, or copies, made to begin the process of retouching the photograph.

In March or April 1989, plaintiff photographed composites of packaging for Destiny for a $500 fee. The composites had an outline of the "Flying Nude" on them which had been traced from the original. This project was completed before the parties had finished negotiations regarding defendant's purchase of the photograph. Plaintiff testified that he did the "shoot" to "show [his] willingness to negotiate, to come to a deal."

Plaintiff invoiced defendant for its use of the retouched photograph on May 10, 1989, prior to receiving the purchase order. The invoice contained the exact same language as the purchase order. Plaintiff often invoiced clients before receiving purchase orders to "expedite the paperwork." Plaintiff never received the dye transfer print defendant made in attempting to come up with a retouched version of the photograph. However, defendant returned the original transparency to plaintiff after cancelling the purchase order in June.

On cross-examination, plaintiff acknowledged that the purchase order did not state a time for payment. He stated that although his invoice requested payment within 30 days, defendant never agreed to that term. Under the agreement, plaintiff could use the original transparency for any purpose, including another advertising campaign. Plaintiff did not know when a redesigned/retouched version of the photograph was supposed to come into existence, although he knew that defendant was responsible for producing it. In response to questioning regarding whether he knew that the redesigned version had to be satisfactory to defendant, plaintiff responded, "That's not my area. That's not for me to determine."

Stephanie Mendel Hayano (Stephanie Hayano) testified that in 1989 she was vice-president of marketing for defendant, although at the time of trial she no longer worked for defendant. She hired Chris Hayano, who eventually became her brother-in-law, as a free-lance art director for the Destiny promotion campaign. She approved of the concept of using the "Flying Nude" in the campaign and subsequently obtained Marilyn Miglin's approval. Lee Miglin, chairman of the board, had reservations about using the photograph because it showed full frontal nudity and because it needed to be softened and set against a different background. He suggested that it be "air brushed."

Stephanie Hayano corroborated plaintiff's testimony regarding the unsuccessful negotiations for defendant's purchase of the rights to the photograph and the parties' eventual agreement to a sale of usage rights in a redesigned or retouched version. She prepared the purchase order, using her notes from the negotiations as the basis for its contents. The invoice and purchase order contain the same language because the parties had discussed the wording to avoid confusion. Lee Miglin authorized the purchase by signing his initials on the purchase order.

When plaintiff requested payment on the purchase order, the Miglins told Stephanie Hayano that they did not believe that they were obligated to pay him because they were unable to produce a suitable retouched version for the campaign. She pointed out to them that they had used the "Flying Nude" on "sell-in brochures." Nevertheless, she signed the letter dated June 21, 1989, cancelling the purchase order.

Stephanie Hayano recalled that several retouched versions of the photograph were produced after defendant sent out the purchase order, but that none was made after the letter of cancellation was sent to plaintiff. She explained that sell-in brochures were packages of materials sent to retailers to introduce a new line. They contained graphics, descriptions of the product, and other advertising. The composite packaging for Destiny was made by blowing up the magazine picture of the "Flying Nude," cutting the figure out, and superimposing it on a blue background. The Destiny sell-in brochures were shown to buyers from Nordstrom, Saks Fifth Avenue, and Marshall Field's. Defendant approved of the redesigned version of the "Flying Nude" used in the sell-in brochures.

On cross-examination, Stephanie Hayano testified that the sell-in brochures were sent to department stores to facilitate sales and not merely to determine whether they liked the concept. However, she conceded that in an earlier deposition she had stated that their purpose was to get feedback on the concept. She testified that the composites created using the "Flying Nude" were not used in any advertising; a different packaging was used. She further testified that at the time that the purchase order was issued, a redesigned version of the "Flying Nude" was in existence and had been used in the sell-in brochures. She stated that the term "unlimited usage rights" did not mean use only in advertising. She also testified that under the terms of the purchase order, the redesigned version was to come into existence "[a]t any time in the future." She conceded that the sell-in brochure did not utilize a retouched version of the actual photograph. She was unsure whether any retouched versions existed before the issuance of the purchase order.

Christopher Hayano testified that he sent the original transparency out to be copied in early April. He returned the original transparency to plaintiff after the copies were made, but he did not give plaintiff the retouched version that defendant worked on.

Plaintiff rested after this testimony. Defendant moved to dismiss the case, but the court denied the motion.

Marilyn Miglin, defendant's president, testified that the brochure using the "Flying Nude" was not a sell-in brochure because it did not contain a marketing plan, a promotional plan and an advertising campaign. The "Flying Nude" brochure was a "concept brochure" used to get comments from retailers regarding whether they felt it was suitable for a national campaign. The brochure was not used to sell Destiny.

Lee Miglin testified that he had been defendant's chairman of the board for 25 years and that he was the only person in the company who could approve a purchase order over $5,000. Defense counsel asked what defendant understood had to be done pursuant to the "Flying Nude" purchase order. Plaintiff objected, stating that such testimony violated the parol evidence rule and should not be considered absent a finding that the agreement was ambiguous. The judge overruled the objection, stating, "I think that's their argument in the case. That's what both of you argue to me whether this is controlling or whether or not there is something that controls, so it's overruled." Lee Miglin then testified that he understood that the company, or someone it hired, would retouch the photograph for use in its advertising campaign and that if it could not use the photograph, it would not have to pay for usage rights. No retouched version of the photograph was ever approved.

Miglin also testified that he was "not concerned too much about the language" in the purchase order, even though it did not expressly state that no payment would be due if a suitable version of the photograph was not created. He thought that the parties understood one another.

Stephanie Hayano testified in rebuttal that the parties deliberately did not limit the usage rights to advertising because it was important for defendant to have the right to use the image in direct mail and other projects not defined as advertising. She also testified that the parties did not discuss the possibility that defendant would not obtain a suitable version of the photograph, stating that "we limited it to the fact that we were buying the rights to the picture."

On January 21, 1994, the judge issued her ruling, finding that the contract was ambiguous, that there was no meeting of the minds,

and that there was therefore no enforceable contract between the parties. She reasoned that

> "[w]hile a number of redesigned/retouched versions were attempted by the defendant in this case—and it does not appear that any retouched/redesigned version ever came into existence that would be used in the marking [*sic*] and promoting of the perfume, such that Gordon Meyer would have given up rights to its usage.
>
> There was nothing used by Marilyn Miglin in this regard. Because there could be no usage rights until a redesigned/retouched version came into existence. The Court, therefore, finds that there was no meeting of the minds and no enforceable contract was entered into by the parties."

Plaintiff now appeals.

He first argues that the trial court erred in permitting the introduction of parol evidence prior to making a determination that the terms of the agreement were ambiguous.

We begin our analysis by setting forth some elementary principles of contract law. A court's principal goal in construing a contract is to ascertain and give effect to the parties' intent at the time they entered the contract. (*USG Corp. v. Sterling Plumbing Group, Inc.* (1993), 247 Ill. App. 3d 316, 318, 617 N.E.2d 69, 70.) In order for a contract to exist, there must be mutual assent by the parties on the essential elements contained therein. *Calo, Inc. v. AMF Pinspotters, Inc.* (1961), 31 Ill. App. 2d 2, 8, 176 N.E.2d 1, 4-5.

The determination of whether or not a contract is ambiguous is an issue of law for the court. (*Wald v. Chicago Shippers Association* (1988), 175 Ill. App. 3d 607, 617, 529 N.E.2d 1138, 1145.) The parties' disagreement regarding how to interpret the terms of a contract does not, in itself, render the contract ambiguous. (*USG Corp.*, 247 Ill. App. 3d at 318, 617 N.E.2d at 71.) If the contract terms are unambiguous, the parties' intent must be ascertained exclusively from the express language of the contract, as a matter of law. (*Ancraft Products Co. v. Universal Oil Products Co.* (1981), 100 Ill. App. 3d 694, 697, 427 N.E.2d 585, 587; *Farm Credit Bank v. Whitlock* (1991), 144 Ill. 2d 440, 447, 581 N.E.2d 664, 667.) A contract is properly found ambiguous "when the language used is susceptible to more than one meaning [citation] or is obscure in meaning through indefiniteness of expression [citation]." (*Wald*, 175 Ill. App. 3d at 617, 529 N.E.2d at 1145.) If the court determines that the contract is ambiguous, parol evidence may be considered by the trier of fact in determining the parties' intent. (*Farm Credit Bank*, 144 Ill. 2d at 447, 581 N.E.2d at 667.) A contract is binding and enforceable only if its material terms

are definite and certain. See *Wilson v. Middendorf* (1993), 248 Ill. App. 3d 870, 872, 619 N.E.2d 179, 180.

■ There has been a split of authority in Illinois regarding whether the trial court may provisionally consider extrinsic evidence to ascertain the definition of terms used by the parties in its effort to determine whether the contract is ambiguous. (See Closen, *The Parol Evidence Rule and Contract Interpretation,* in Illinois Contract Law ch. 3, § 3.20 (Ill. Inst. for Cont. Legal Educ. 1983) (hereinafter *Parol Evidence Rule*).) However, the weight of recent authority supports the provisional admission approach. (*URS Corp. v. Ash* (1981), 101 Ill. App. 3d 229, 233-35, 427 N.E.2d 1295, 1299; *USG Corp.,* 247 Ill. App. 3d at 318, 617 N.E.2d at 71; *Rybicki v. Anesthesia & Analgesia Associates, Ltd.* (1993), 246 Ill. App. 3d 290, 300-01, 615 N.E.2d 1236, 1242-43.) We agree that the provisional approach is sound because, as we have previously observed, " '[t]he meaning of words cannot be ascertained in a vacuum.' " (*URS Corp.,* 101 Ill. App. 3d at 234, 427 N.E.2d at 1299, quoting *Ortman v. Stanray Corp.* (7th Cir. 1971), 437 F.2d 231, 234.) The provisional admission approach allows the court to view the language of the document from the perspective of the parties at the time of its execution. *URS Corp.,* 101 Ill. App. 3d at 234-35, 427 N.E.2d at 1299-1300.

■ Plaintiff accepts the provisional admission approach, but argues that Miglin's testimony referred to a completely separate agreement and not to the definition of terms within the purchase order. In our view, the judge correctly permitted Lee Miglin to testify regarding his understanding of the contract in her attempt to ascertain whether there was any ambiguity in the contract. In a bench trial, as in the case at bar, the judge is entrusted to disregard the parol or extrinsic evidence if no ambiguity is found. (See *Parol Evidence Rule* at ch. 3, § 3.22.) Moreover, when the judge issued her ruling, she stated that she first found that the purchase order was ambiguous before considering the extrinsic evidence. Therefore, the trial judge made clear that she adhered to the law by examining extrinsic evidence provisionally and considering it only after making her determination that the purchase order was ambiguous. (See *URS Corp.,* 101 Ill. App. 3d at 235, 427 N.E.2d at 1299.) However, as discussed below, we disagree with her finding that the order was ambiguous and that no contract existed between the parties.

The trial court noted that the purchase order is silent regarding: the length of time defendant had to come up with a redesigned/ retouched version of the photograph; an explanation or definition of what the redesigned/retouched version was; who was to do the redesigning or retouching; and who was to approve the redesigned/ retouched version. However, the parties agreed, and the language of

the order indicates, that defendant was purchasing rights to use a retouched version of the photograph. In fact, defendant apparently still possesses the versions it created for Destiny and nothing could prevent it from using them for another product. Even if it could not be inferred from the purchase order, both Lee Miglin and plaintiff testified that defendant was responsible for creating the redesigned version. While the court focused on a definition of the version, the purchase order refers to the sale of "usage rights," which defendant obtained.[1]

■ The contract was not ambiguous regarding terms of approval because, as plaintiff asserts, such a condition precedent never existed. When a party to a contract contends that language it inserted into the agreement creates a condition precedent, that party must establish that the parties intended such a condition at the time they entered the contract. (See *F.E. Holmes & Son Construction Co. v. Gualdoni Electric Service, Inc.* (1982), 105 Ill. App. 3d 1135, 435 N.E.2d 724.) The purchase order in the present case lacks any language indicating that defendant had to approve a redesigned or retouched version prior to payment. Lee Miglin essentially admitted that he was aware that the order lacked such an express condition, but he relied on the parties' cooperation in this regard. Thus, there is no ambiguity here; there is simply the absence of a condition precedent. See *Bank of Ravenswood v. Polan* (1993), 256 Ill. App. 3d 470, 474, 628 N.E.2d 194, 198 (noting that if the intent of the parties is clear from undisputed facts, the court can determine the meaning of the contract as a matter of law), *appeal denied* (1994), 155 Ill. 2d 561, 633 N.E.2d 1.

■ Plaintiff next points out that any possible ambiguity regarding time of payment was resolved by an implied term that payment was to be made within a reasonable time. We agree, for when a time for performance is not specified, a reasonable time will be implied. See *Clay v. Harris* (1992), 228 Ill. App. 3d 475, 592 N.E.2d 1154, *appeal*

---

[1]Plaintiff contends that any ambiguity regarding who would perform the retouching was created by defendant in its purchase order and, therefore, the order should be construed against defendant. While plaintiff is correct that ambiguities in contracts are generally construed against the drafter, an exception to that rule exists when the drafter uses the same form and language as the other party to the contract. (See *Ancraft*, 100 Ill. App. 3d at 698, 427 N.E.2d at 588.) In the present case, plaintiff and defendant used precisely the same language in the invoice and purchase order. In fact, the plaintiff's invoice was sent before the purchase order was issued. Moreover, Stephanie Hayano testified that the parties agreed to the language when they were negotiating the sale of the photograph.

*denied* (1992), 146 Ill. 2d 624, 602 N.E.2d 448; *Stanley v. Chastek* (1962), 34 Ill. App. 2d 220, 180 N.E.2d 512.

●5 In addition to relying on the analysis of the trial court, defendant raises two additional arguments supporting its contention that no contract existed. First, it notes that the purchase order was not signed by the parties. We find this argument to be without merit. If a document is signed by the party being charged, the other party's signature is not necessary if the document is delivered to that party and she indicates acceptance through performance. (*St. Francis Medical Center v. Vernon* (1991), 217 Ill. App. 3d 287, 289-90, 576 N.E.2d 1230, 1231.) In the present case, Lee Miglin initialed the order, plaintiff invoiced defendant, and plaintiff sent the original transparency to defendant. Thus, defendant signed the document, plaintiff indicated acceptance through performance, and plaintiff's signature was therefore unnecessary to create a binding agreement.[2]

Defendant next contends that plaintiff provided no consideration for the contract, citing the rule that an executory contract without consideration is unenforceable either at law or equity. (*Corroon & Black of Illinois, Inc. v. Magner* (1986), 145 Ill. App. 3d 151, 162, 494 N.E.2d 785, 791.) Defendant states that it gained no benefit and plaintiff gave up nothing by virtue of the purchase order because no suitable version of the photograph ever came into existence. These arguments hinge on the erroneous premise that defendant contracted to pay for a redesigned/retouched version of the photograph only if a suitable version for the Destiny marketing campaign was created. By the terms of the purchase order, plaintiff's consideration was the relinquishment of limited rights to his photograph and defendant's benefit was the right to use a modified version of the photograph.

We accordingly hold that the trial court erred in finding that the purchase order was ambiguous, because the essential terms of the agreement are clear. Although inartfully drawn, the purchase order is sufficient to create an enforceable agreement. Significantly, it was entered into by two experienced businesses; this court may not rewrite its terms to provide defendant with a better bargain than it agreed to. (*Cf. Academy Chicago Publishers v. Cheever* (1991), 144 Ill. 2d 24, 31, 578 N.E.2d 981, 984 (noting that it is not a court's function to rewrite a contract to include essential terms that the parties omit-

---

[2]Although defendant's chairman, Lee Miglin, merely initialed the purchase order, initialing constituted a sufficient signature especially in view of his testimony that only he could approve such an expenditure. See *Weston v. Myers* (1864), 33 Ill. 424, 432-33; see also *Monetti, S.P.A. v. Anchor Hocking Corp.* (7th Cir. 1991), 931 F.2d 1178, 1182.

ted).) Even if the order is ambiguous, the parties' testimony reveals agreement on essential terms. Defendant offered to purchase limited rights to plaintiff's photograph; plaintiff agreed and delivered the original so that defendant could create a retouched version. The parties also agree that the writing contained no condition precedent requiring defendant's approval prior to payment. In addition, while defendant may not have used the photograph for purposes of the Destiny campaign as it had hoped to, it has used and developed modified versions of the photograph without compensating plaintiff.

■ Defendant finally argues that the Statute of Frauds bars any oral agreement between the parties that defendant would produce a satisfactory version of the photograph in an indefinite period or that plaintiff would give limited rights to the use of that photograph in perpetuity. The Statute of Frauds provides in pertinent part that

> "[n]o action shall be brought, whereby *** to charge any person *** upon any agreement that is not to be performed within the space of one year from the making thereof, unless the *** agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized." (740 ILCS 80/1 (West 1992).)

There is no evidence of such an oral agreement in the present case. However, assuming *arguendo* that the parties had entered an oral agreement, it is not clear that it would be barred by the statute. If an oral agreement possibly could be performed within one year, it does not come within the Statute of Frauds. (See *Hubbard v. Logsdon* (1978), 56 Ill. App. 3d 366, 373-74, 372 N.E.2d 101, 106; *Stein v. Malden Mills, Inc.* (1972), 9 Ill. App. 3d 266, 271, 292 N.E.2d 52, 57.) The development and use of a version of the photograph could have been completed within one year, taking the agreement outside the provisions of the Statute of Frauds.

Based upon the foregoing, we reverse the judgment of the trial court and order that judgment be entered in favor of plaintiff.

Reversed and remanded for further proceedings consistent with the views expressed herein.

DiVITO and McCORMICK, JJ., concur.