No. 3–10–0584

Opinion filed February 24, 2011

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2011

| | | |
|---|---|---|
| THE RICHARD W. McCARTHY TRUST DATED SEPTEMBER 2, 2004, as amended, and THE ESTATE OF RICHARD McCARTHY, | ) ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois |
| Plaintiffs-Appellees, | ) ) ) | |
| v. | ) ) | No. 09-L-80 |
| ILLINOIS CASUALTY COMPANY, a Mutual Insurance Company, | ) ) ) | |
| Defendant-Appellant | ) ) | |
| (John R. Klockau, an Individual, and Allen Messer, an Individual, | ) ) ) | Honorable Mark A. Vandewiele, |
| Defendants). | ) | Judge, Presiding. |

PRESIDING JUSTICE CARTER delivered the judgment of the court, with opinion.
Justice O'Brien concurred in the judgment and opinion.
Justice McDade specially concurred, with opinion.

**OPINION**

Plaintiff, the Richard W. McCarthy Trust (the trust), brought suit against defendant, Illinois

Casualty Company (the company), seeking, among other things, to have the trial court order the

company to specifically perform its obligation under certain surplus notes, held by the trust, to file

an application with the Illinois Department of Insurance for approval to redeem the surplus notes.[1] The trial court granted the trust's partial motion for summary judgment on count VII of the complaint for specific performance.[2] The company filed an interlocutory appeal to challenge the trial court's ruling. We affirm the trial court.

## FACTS

Richard W. McCarthy was an attorney and a member of the board of directors of the company. The company is now a mutual insurance company but was previously an inter-insurance exchange and its affairs were managed by an attorney-in-fact known as Blackhawk, Incorporated. McCarthy was a shareholder in Blackhawk. In or around 2003, the company decided to purchase Blackhawk. The company entered into a stock purchase agreement with McCarthy and the other shareholders to purchase all of the outstanding shares of Blackhawk.

During the negotiations on the matter, in January of 2004, the president of the company at the time, John Klockau, sent McCarthy a letter. Of relevance to this appeal, the January 2004 letter stated, in pertinent part, as follows:

> "Pursuant to a stock purchase agreement to purchase your shares of stock of
>
> Blackhawk, Incorporated, you will receive Convertible Subordinated Guaranty Fund

---

[1]The Estate of Richard McCarthy was later added to the suit as an additional plaintiff. Because both entities' interests in this appeal are relatively the same, we will only refer to the trust.

[2]Other counts of the complaint pertained to defendants, John R. Klockau and Allen Messer. Those counts are not before this court on appeal, and Klockau and Messer have not filed briefs in this appeal.

2

Notes. Paragraph 13. of that Note prohibits assignment without the written consent of [the company].

This letter is intended to provided you with that consent of assignment of the Notes, in whole or in part, subject to the terms and conditions stated herein.

1. Assignment to Richard W. McCarthy Living Trust (or similar estate planning tool) is approved. For this assignment, the assignee will be entitled to the benefits of Paragraph 14. of the Note, thus allowing your Trustee/Successor Trustee to request for redemption of the Note which will then require [the company] to make application for permission to redeem to the Illinois Department of Insurance.

2. Assignment to John S. Callas is approved. For this assignment, the assignee will not be entitled to the benefits of Paragraph 14. of the Note."

McCarthy subsequently entered into the stock purchase agreement with the company. Pursuant to that agreement, in February and July of 2004, the company issued four surplus notes (the notes) to McCarthy in exchange for McCarthy's Blackhawk stock and other cash consideration. The total principal amount of the notes was $1.6 million, which was to be paid back over a 30-year period at certain fixed rates of interest. Of relevance to this appeal, the notes provided, in pertinent part, as follows:

"1. No part of the principal or interest hereof shall be paid or payable except after prior authorization for payment thereof by the Director of Insurance of the State of Illinois. The Company's obligation to pay is subordinate to the insurance claims of policyholders of the Company in accordance with the terms of Section 56 of the Illinois Insurance Code.

3

\*\*\*

3. No payment of accrued interest or repayment of the principal amount hereof shall be made or authorized in whole or in part if such payment or repayment would reduce the capital and surplus of the Company to less than the sum of 18.5 million dollars ($18,500,000). No part of the obligation to pay principal or accrued interest may be offset or subject to recoupment with respect to any liability owed to the Company. No agreement or interest securing this note, whether existing on the date hereof or subsequently entered into, applies to the obligation of the Company under this note.

\* \* \*

6. Repayment of the principal hereof and payment of the interest hereon shall be and is hereby subordinated to the prior payment of, or provision for, all general liabilities of the Company and the claims of the policyholders and the creditors of the Company, but shall rank superior to the claim, interest and equity of the shares or shareholders of the Company \*\*\*.

\* \* \*

13. This note may not be assigned without the written consent of the Company.

14. In the event of the death of the owner who is also original holder of this Note, the Company agrees upon request of the deceased Note holder's estate to make timely application to the Director of Insurance of the State of Illinois for approval to retire the unpaid principal and pay the accrued interest to the estate of the deceased

Note owner, subject to the other terms and conditions of this Note.

\*\*\*

16. The terms hereof may be amended, modified and altered from time to time by the mutual agreement of the parties subject to the prior approval thereof by the Director of Insurance of the State of Illinois."[3]

In September of 2004, McCarthy created a living trust. McCarthy was the initial trustee of the trust and John S. Callas, who was McCarthy's law partner and also a member of the company's board of directors, was successor trustee of the trust. In November of 2005, McCarthy sent the company a letter requesting a change in the ownership designation of the notes. The letter provided, in pertinent part, as follows:

"In connection with my estate plan, I have established a revocable living trust, and I am hereby requesting TRANSFER and do hereby ASSIGN, all of my right, title and interest in [the notes] currently titled in my name individually to my living trust as specified below.

\* \* \*

Please change the ownership designation on each account or certificate to: Richard McCarthy, Trustee of the Richard McCarthy Living Trust U/T/A dated September 2, 2004.[4]

My trust is a 'Grantor Trust.' Under the provisions of Treasury Regulations

---

[3]The language contained in paragraph No. 16 above was actually in paragraph No. 15 in the fourth note.

[4]The date in this portion of the letter was handwritten.

5

Sections 1.671-4(b)(2), 1.671-4(b)(8), and 301.6109-1(a)(2)(i), all interest or other items of income will continue to be reported under my personal social security numbers, as in the past. It is my understanding that you will not impose any penalty by reason of this transfer. If that understanding is not correct, please notify me prior to affecting the requested transfer.

I understand this transfer will have no effect on the payment due or amounts scheduled to [be] paid under the terms and conditions of the [notes]. I trust [the company] will notify, as necessary, the Illinois Department of Insurance and any other regulatory body or agency affected by the transfer." (Emphases in original.)

On the second page of the November 2005 letter, a blank was provided or added for Klockau, as the company president, to sign and date the letter, under the typewritten notation, "[a]ssignment hereby accepted and verifying transfer on behalf of the note holder." (Emphases in original.) The company board (the board) issued a memorandum authorizing Klockau to accept and approve the assignment. Klockau signed the second page of the November 2005 letter under the typewritten notation and dated it November 1, 2005. In December of 2005, the company notified the Department of Insurance (the Department) that McCarthy had requested permission to assign ownership of the notes from himself to the trust and that the board had approved the request. The Department noted on the letter from the company that "no regulatory action [was] required" for the change in ownership of the notes.

McCarthy died in April of 2008. In June of 2008, Callas, as successor trustee of the trust, sent a letter to the company requesting that the company redeem the notes and requesting that the company send a letter to the Department for approval of redemption. The board rejected the trust's request, stating that: (1) it was not convinced that the trust had the right to request redemption under

paragraph No. 14 of the notes; and (2) it did not believe that the company was in a financial position to currently redeem the notes. The board noted in the letter that due to increased claims costs and the downturn in the equities market, the surplus of the company had been adversely affected. The board went on to state that it did not believe that the Department would grant such a request and that it also did not believe that it was in the best interests of the policyholders of the company to deplete the surplus of the company by $1.6 million. The trust sent additional requests to the company requesting that the company redeem the notes and requesting that the company send a letter to the Department for approval. The company denied those requests, as well.

In June of 2009, the trust filed the instant action. Count VII of the second amended complaint, which was directed at the company, was for specific performance and sought to have the trial court order the company to send a letter to the Department to request approval for redemption of the notes. The trust later filed a motion for partial summary judgment on count VII of the complaint for specific performance. The company opposed summary judgment. Extensive pleadings were filed in support of, and in opposition to, the motion.

A hearing was held on the motion in July of 2010. At the time of the hearing, the trial court had before it numerous supporting documents, including: the notes; the January 2004 letter; the November 2005 letter; the board approval of the November 2005 request for assignment; the company's letter to the Department notifying the Department of the assignment, with the notation by the Department that no regulatory action was required; and various affidavits. After hearing the arguments of the attorneys, the trial court took the matter under advisement. The trial court later issued a lengthy detailed written ruling granting the trust's motion for partial summary judgment on count VII for specific performance. The trial court found, among other things, that: (1) the January 2004 letter clarified or amended the company's position with regard to paragraphs Nos. 13 and 14

7

of the notes; (2) the November 2005 letter was an attempt to modify the terms of the notes; (3) the terms of the modification, as contained in the November 2005 letter, were ambiguous; (4) when the November 2005 letter was considered with the January 2004 letter, the only conclusion that could be reached was that the intent of the parties in the modification was to allow McCarthy to transfer ownership of the notes to the trust and to allow the trust to redeem the notes upon McCarthy's death (that the trust would have the same rights as the original holder of the notes); (5) the company had no discretion under paragraph No. 14 of the notes to refuse to request permission from the department for redemption of the notes; and (6) the business judgment rule did not allow the company to ignore its obligation under the notes. The trial court also made a finding pursuant to Illinois Supreme Court Rule 304 (eff. February 26, 2010) that there was no just reason to delay enforcement or appeal of its ruling. The company filed an interlocutory appeal to challenge the trial court's grant of partial summary judgment for the trust.

## ANALYSIS

On appeal, the company argues that the trial court erred in granting partial summary judgment for the trust on count VII of the complaint for specific performance. In support of its argument, the company asserts that: (1) paragraph No. 14 of the notes is clear and unambiguous, does not give the trust the right to redeem the notes, and should be enforced as written; (2) the January 2004 letter is merely part of the negotiations leading up to the notes, is barred by the parol evidence rule, and should not be considered in the summary judgment proceeding; (3) even if the January 2004 letter is properly considered, it is not binding upon the company because it was not approved by the board or by the Department, or at the very least, a question of fact remains as to the issue of approval; (4) the trial court incorrectly found that the November 2005 letter was ambiguous, that it had to be read in conjunction with the January 2004 letter, and that it amended the term of the notes to allow the

8

trust to seek redemption upon McCarthy's death; (5) even if the November 2005 letter modified the terms of the trust, the modification was not effective because it was not approved by the board or the Department, and only a change in the ownership of the notes was approved; (6) any argument by the trust that ownership of the notes did not change has no legal merit; (7) the trial court erred in finding that the board did not have discretion to consider the company's financial condition in deciding whether to request approval for redemption from the Department; and (8) the board's decision not to request approval for redemption from the Department is protected by the business judgment rule. The company asks that we reverse the trial court's grant of partial summary judgment for the trust on count VII of the complaint for specific performance.

The trust argues that the trial court's grant of partial summary judgment in its favor on count VII of the complaint was proper and should be affirmed. The trust asserts that: (1) the change on the name of the notes from McCarthy individually to McCarthy as trustee of the trust does not change ownership of the notes and, thus, McCarthy, through the trust, is still the holder of the notes and is entitled to request redemption under the plain language of paragraph No. 14 of the notes; (2) any ambiguity that exists arises from the company's assertion that McCarthy, through the trust, is not still the holder of the notes; (3) the January 2004 letter is admissible as parol evidence to address the ambiguity in the November 2005 letter; (4) when the January 2004 letter and the November 2005 letter are read together, the only conclusion that can be reached is that the trust has the same right as the original note holder to request redemption of the notes under paragraph No. 14; and (5) the business judgment rule does not authorize the board to ignore the company's contractual obligations or to avoid payment of the company's ongoing financial obligations without justification. The trust asks that we affirm the trial court's grant of partial summary judgment in its favor on count VII of the complaint for specific performance.

The purpose of summary judgment is not to try a question of fact, but to determine if one exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2008); *Adams*, 211 Ill. 2d at 43. In appeals from summary judgment rulings, the standard of review is *de novo*. *Adams*, 211 Ill. 2d at 43.

Although the parties in this case have made numerous assertions in support of their arguments, in our opinion the issue in this case ultimately turns on whether the November 2005 letter, and the subsequent agreement to that letter by the company, constituted a valid modification of the notes, and if so, the effect of that modification on paragraph No. 14 of the notes. Thus, we will consider first whether the November 2005 letter was a modification of the notes.

A modification of a contract is a change in one or more aspects of a contract that introduces new elements into the details of the contract or cancels some of them but leaves the general purpose and effect of the contract undisturbed. *Schwinder v. Austin Bank of Chicago*, 348 Ill. App. 3d 461, 468 (2004). Parties to a contract are generally free to modify the contract by mutual assent or agreement, as long as the modification does not violate law or public policy. *Schwinder*, 348 Ill. App. 3d at 468. "Under Illinois law, a valid modification of a contract must satisfy all the criteria essential for a valid original contract, including offer, acceptance, and consideration." *Schwinder*, 348 Ill. App. 3d at 468. When a modification is inconsistent with a term of a prior contract between the same parties, the modification is interpreted as including an agreement to rescind the inconsistent term in the prior contract. *Schwinder*, 348 Ill. App. 3d at 469. "The modified contract is regarded as creating a new single contract consisting of so many of the terms of the prior contract as the parties

10

have not agreed to change, in addition to the new terms on which they have agreed." *Schwinder*, 348 Ill. App. 3d at 469.

In the instant case, in the November 2005 letter, McCarthy sought to change the ownership designation of the notes, while still leaving the remaining terms of the notes intact. The purpose of the November 2005 letter is consistent with the definition of a modification. See *Schwinder*, 348 Ill. App. 3d at 468. Moreover, paragraph No. 16 of the notes specifically provides that the notes could be modified from time to time by mutual agreement of the parties, subject to the approval of the Department.[5] We conclude, therefore, as the trial court found, that the November 2005 letter was an attempt to modify the terms of the notes. We also conclude, contrary to the company's assertion on appeal, that the company approved the modification. The record is clear on that matter. Klockau, as president of the company, indicated his approval by signing the second page of the November 2005 letter, an action he was authorized to take by resolution of the board. The record is also clear that the Department approved the modification when it noted on the letter sent to it by the company that no regulatory action was required. Under the circumstances of this case, we find that the November 2005 letter, with the subsequent agreement by the company and approval by the Department, was a valid modification of the notes. See *Schwinder*, 348 Ill. App. 3d at 468-69.

A more difficult question, in our opinion, is the effect of that modification on paragraph No. 14 of the notes. That question requires us to interpret the terms of the modification. The interpretation of any contract is a question of law and is subject to *de novo* review on appeal in accordance with the general rules applicable to contract interpretation. *Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007); *Schwinder*, 348 Ill. App. 3d at 469. The primary goal of contract interpretation

___

[5]Paragraph No. 15 in the fourth note.

is to give effect to the intent of the parties. *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). In determining the intent of the parties, a court must consider the contract document as a whole and not focus on isolated portions of the document. *Gallagher*, 226 Ill. 2d at 233; *Premier Title Co. v. Donahue*, 328 Ill. App. 3d 161, 164 (2002). If the language of a contract is clear and unambiguous, the intent of the parties must be determined solely from the language of the contract document itself, which should be given its plain and ordinary meaning, and the contract should be enforced as written. *Virginia Surety Co.*, 224 Ill. 2d at 556; *J.M. Beals Enterprises, Inc. v. Industrial Hard Chrome, Ltd.*, 194 Ill. App. 3d 744, 748 (1990); *Reaver v. Rubloff-Sterling, L.P.*, 303 Ill. App. 3d 578, 581 (1999). However, if the contract language is ambiguous, the meaning of the contract language must be ascertained through a consideration of extrinsic evidence. *Gallagher*, 226 Ill. 2d at 233.

The determination of whether a contract is ambiguous is a question of law for a court to decide. *Meyer v. Marilyn Miglin, Inc.*, 273 Ill. App. 3d 882, 888 (1995). That the parties disagree on the meaning of a term of a contract does not, in itself, render that term of the contract ambiguous. *Meyer*, 273 Ill. App. 3d at 888. Rather, a contract is ambiguous when the language used in the contract is susceptible to more than one reasonable interpretation. *Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd.*, 223 Ill. 2d 407, 417 (2006). If a court determines that a contract is ambiguous, extrinsic evidence may be considered by the trier of fact in determining the intent of the parties. *Meyer*, 273 Ill. App. 3d at 888.

After reviewing the November 2005 letter, we find that the terms of the modification, as expressed in the letter itself, are ambiguous. Specifically, the language of the letter pertaining to the effect of the modification on paragraph No. 14 of the notes is susceptible to more than one reasonable interpretation. See *Nicor, Inc.*, 223 Ill. 2d at 417. Thus, we must consider extrinsic evidence to

12

determine the intent of the parties.  See *Gallagher*, 226 Ill. 2d at 233*; Meyer*, 273 Ill. App. 3d at 888.

Normally, when the contract term in question is ambiguous, a question of fact exists, which must be determined by the trier of fact, and summary judgment may not be granted.  See *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 272 (1992); *William Blair & Co., L.L.C. v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 342 (2005).  However, under the unique circumstances of the present case, an exception to the general rule applies and summary judgment may be granted because the extrinsic evidence submitted by the parties leaves no genuine issue of material fact in dispute.  See *William Blair & Co., L.L.C.*, 358 Ill. App. 3d at 342 (summary judgment is generally inappropriate when the contract term in question is ambiguous, unless the evidence submitted by the parties leaves no genuine issue of material fact in dispute as to that term).  When the November 2005 letter in the instant case is considered with the January 2004 letter, it is clear that the intent of the parties was to allow McCarthy to change the form of ownership of the notes to his trust for estate planning purposes and that his trust would still be allowed to redeem the notes upon his death under paragraph No. 14 of the notes.[6]  As the trial court noted, that is the only conclusion that can be reached when the two letters are read together.  No genuine issue of material fact remains as to the interpretation of the modification.  Although Klockau submitted an affidavit to dispute the meaning of the January 2004 letter, the January 2004 letter was not ambiguous and Klockau's affidavit cannot

---

[6]Contrary to the assertion of the trust, there is no question under Illinois law that the change in the name on the notes from McCarthy individually to McCarthy as trustee of the trust was a change in the ownership of the notes.  The trust is a separate legal entity.  See *Hanley v. Kusper*, 61 Ill. 2d 452, 461 (1975); *Pierce v. Chester Johnson Electric Co.*, 117 Ill. App. 3d 867, 868 (1983).

be used to dispute the meaning of the January 2004 letter.

Having determined that the November 2005 letter was a modification of the notes and the effect of that modification on paragraph No. 14 of the notes, we now consider two of the remaining assertions made by the company in support of its argument on appeal. The first assertion is that the company had discretion to consider its financial condition before submitting any request for redemption of the notes to the department. We do not agree. The language of paragraph No. 14 of the notes is clear and unambiguous and provides no such discretion to the company. That portion of paragraph No. 14 was not affected by the later modification.

The only remaining consideration is the company's assertion that the business judgment rule protects its decision not to request approval from the Department for redemption of the notes. The company's attempt to apply the business judgment rule to facts of this case, however, is somewhat misguided. The business judgment rule, which presumes that corporate directors act in the best interests of the corporation, is intended to protect corporate directors from liability and generally comes into play when a cause of action is based upon mismanagement of the company. See *Willmschen v. Trinity Lakes Improvement Ass'n*, 362 Ill. App. 3d 546, 550 (2005); *Stamp v. Touche Ross & Co.*, 263 Ill. App. 3d 1010, 1015 (1993). However, in count VII of the complaint in the instant case, the trust did not seek to hold the directors liable for mismanagement of the company. Rather, the trust merely sought to compel the company to honor its obligation under the notes and to request approval from the Department for redemption of the notes. Thus, under the facts of this case applicable to count VII of the complaint, the business judgment rule does not apply.

For the foregoing reasons, we affirm the judgment of the circuit court of Rock Island County.

Affirmed.

JUSTICE McDADE, specially concurring:

14

I am in complete agreement with the majority's decision in all respects save one. For the reasons that follow, I do not find the November 2005 documents to be ambiguous and would, therefore, find no need to consider the January 2004 documents as extrinsic evidence. Thus I would affirm the trial court's allowance of partial summary judgment, but on different grounds, and would also affirm, as has the majority, its decisions concerning ICC's obligation to respond to the request for information from the Department of Insurance.

Richard McCarthy formed the Richard W. McCarthy Trust on September 2, 2004. In November 2005, McCarthy made a written request to change ownership of the notes to the trust. The November letter reads, in pertinent part, as follows:

> "In connection with my estate plan, I have established a revocable living trust, and I am hereby requesting TRANSFER and do hereby ASSIGN, all of my right, title and interest in [the notes] currently titled in my name individually to my living trust as specified below.
>
> * * *
>
> Please change the ownership designation on each account or certificate to: Richard McCarthy, Trustee of the Richard McCarthy Living Trust U/T/A dated September 2, 2004.
>
> My trust is a 'Grantor Trust.' Under the provisions of Treasury Regulations Sections 1.671-4(b)(2), 1.671-4(b)(8) and 301.6109-1(a)(2)(I), all interest or other items of income will continue to be reported under my personal social security numbers, as in the past. *It is my understanding that you will not impose any penalty by reason*

15

*of this transfer. If that understanding is not correct, please notify me*

*prior to affecting [sic] the requested transfer.*

*I understand this transfer will have no effect on the payment*

*due or amounts scheduled to [be] paid under the terms and*

*conditions of the [notes].*"  (Emphasis added.)

Pursuant to a memorandum issued by the board of Illinois Casualty Company (ICC) authorizing acceptance and approval of the transfer, ICC's president, John R. Klockau, signed the second page of the letter, accepting and verifying the transfer and dating it November 1, 2005.  In December, ICC notified the Department of Insurance of McCarthy's request and its approval.  The Department noted on the company's letter that there was "no regulatory action required."

I find no ambiguity in these documents.  McCarthy's written request is that he be allowed to transfer "all" of his right, title and interest in the notes from himself as an individual to himself as trustee of the Richard W. McCarthy Trust.  "All" is not ambiguous.  It conveys McCarthy's intent to transfer and assign every right, every title and every interest he currently holds to his living trust.  He expresses that request and intent without any reservation.

McCarthy does not stop with that clear and unequivocal declaration of the parameters of his request.  He further states his *understanding* that the transfer will be effected without "any penalty by reason of this transfer," and asks ICC to notify him, prior to effecting the transfer, if his understanding (that "all" of his right, title and interest can be transferred and assigned without "any penalty") is not correct.

Then he clarifies his understanding even further: this transfer will have no effect on the payment due or amounts "scheduled to be paid *under the terms and conditions of the [notes]*."  (Emphasis added.)

16

It appears to me that McCarthy made his request and his understanding of its effect perfectly clear and unequivocal.

ICC responded with equal clarity. The ICC board authorized its president, John Klockau, to accept and approve the requested transfer and then notified the Department of Insurance of the transfer. At no time did ICC advise McCarthy that his "understanding" of a transfer without penalty to any of his rights was incorrect to the extent that neither he nor any successor trustee would be treated as an "original holder" following transfer. Nor did ICC advise McCarthy that paragraph 14 would not apply to any "amounts scheduled to [be] paid under the terms and conditions of the [notes]" because neither McCarthy nor any successor trustee would be treated as or deemed to be the "original holder." Nor did ICC advise the Department of Insurance that although the transfer/assignment had been granted, the assignees would not have the right to seek accelerated payment pursuant to paragraph 14.

The majority has found, and I agree, that this agreement was capable of being modified by agreement of the parties and that the transfer and assignment effected a modification as requested of ICC by McCarthy. Slip op. at 10-11. Given this modification, there is no need to consider or decide whether the transfer of the notes constituted a change of ownership. By the transfer on McCarthy's requested terms, ICC gave up its right to enforce the "original holder" requirement for accelerated payment upon the death of McCarthy, the grantor of the trust.

In my opinion, this court should construe the contract to mean precisely what it says: that McCarthy requested, and ICC agreed, to assign *all* of his rights, including his rights under paragraph 14, to the trust. Further, the plain language of the November letter shows that ICC agreed to McCarthy's request without limitation or modification. The November letter did not need to specifically reference accelerated payment if it referenced all of McCarthy's rights because those

17

rights included accelerated payment. Similarly, the Board's approval did not have to specifically reference paragraph 14 to find that it agreed to transfer the rights granted under paragraph 14 to the trust. The approval was of the request to assign all rights to the trust.

ICC argues that its December 2005 letter to the Department, notifying it of the action requested in the November letter, is also consistent with ICC's interpretation of the effect of the November letter because it does not request the Department's permission to change the terms of the notes to allow the trust to request accelerated payment when the terms of the notes provide that only the original holder may request accelerated payment. ICC argues its interpretation is consistent with paragraph 13 of the notes, which contemplates transfer of ownership without Department approval. The Department's response that no regulatory action was required is also consistent with its interpretation based on sections 301.30 and 301.70 of title 50 of the Illinois Administrative Code (50 Ill. Adm. Code 3001.30, 301.70 (2010)).

Section 301.30 of title 50 of the Administrative Code provides, in pertinent part, as follows:

"Guaranty Fund or Guaranty Capital certificates issued pursuant to Section 56 of the Illinois Insurance Code [215 ILCS 5/56] shall be submitted, in duplicate, for the approval of the Illinois Director of Insurance (Director) prior to being issued by the company. The certificate must state that, all payments of principal and/or interest must be approved by the Director; and that the obligation of the company under such certificate may not be offset or be subject to recoupment with respect to any liability or obligation owed to the company; and that no agreement or interest securing such certificate, whether existing on the date of such certificate or subsequently

18

entered into, applies to the obligation under such certificate." 50 Ill. Adm. Code 301.30 (2010).

Section 301.70 of Title 50 of the Administrative Code reads as follows:

"A company may only retire guaranty funds and guaranty capital and make payment of interest on any indebtedness as provided under Section 56 of the Illinois Insurance Code ***. No payment shall be authorized by the Director unless:

a) The company's surplus as regards policyholders is reasonable in relation to its outstanding liabilities and adequate for its financial needs (the determination of the reasonableness and adequacy of surplus shall include consideration of the following factors: premium volume as referenced in Sections 144 and 244.1 of the Illinois Insurance Code (Code) ***; lines of business and additional authority as referenced in Sections 4, 11, 39, and 245.23 of the Code *** and Section 2-1 of the Health Maintenance Organization Act ***; reserves, company size and operational history

19

as referenced in Section 113 of the

Code \*\*\*), and

      b) Such payment will not

reduce the company's surplus as

regards policyholders to less than that

currently required under Section 43 of

the Illinois Insurance Code \*\*\*, and

      c) Such payment is consistent with the terms of

the certificate approved pursuant to Section 301.30 of

this Part."  50 Ill. Adm. Code 301.70 (2010).

ICC's argument that an assignment of McCarthy's rights under paragraph 14 to the trust would require regulatory approval lacks statutory support.  ICC cites no support for finding that an assignment of rights in an existing agreement is subject to regulatory approval.  Section 56 of the Illinois Insurance Code merely provides for the *right* to "provide for a surplus either by accumulating a guaranty fund or a guaranty capital."  215 ILCS 5/56 (West 2006).  Section 301.30 of title 50 of the Administrative Code does not address the assignment of rights under a certificate that has been previously approved by the Director.  That interpretation is supported by the Department's response that no regulatory action was required to assign McCarthy's rights under the notes despite clear evidence that this was precisely what the parties may have intended.  Under the parties' agreement as reflected in the November letter, the actual terms of the original notes remained the same.  The rights of the original holder were transferred to the trust, but the actual terms of the notes did not change.

For the foregoing reasons, I would find that the November 2005 documents are unambiguous

20

and that there is no need and no legal justification to rely on extrinsic evidence to determine their meaning and effect.

I agree with the reasoning of the majority in all other respects and concur in affirming the trial court's judgment.