2022 IL App (1st) 200544-U

No. 1-20-0544

Order filed March 24, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| DENISE ANDREWS and CANDICE CUNNINGHAM, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellees, | ) | Cook County, Illinois |
| | ) | |
| v. | ) | No. 2017 L 004486 |
| | ) | |
| PETER QIU, | ) | Honorable |
| | ) | Patrick J. Sherlock, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We affirm the trial court's judgments in favor of the tenants pursuant to the Chicago Residential Landlord and Tenant Ordinance (Chicago Municipal Code § 5-12-010, *et. seq.* (amended July 28, 2010)).

¶ 2   This appeal concerns the rights and obligations of the parties with respect to a residential lease for the rental of a single-family residence located at 3851 South Emerald Avenue, Chicago, Illinois (premises). Defendant-appellant Peter Qiu is the lessor (Mr. Qiu). The lessees are plaintiffs-appellees, Denise Andrews (Ms. Andrews), and her daughter Candice Cunningham (Ms. Cunningham) (collectively plaintiffs).

¶ 3    Ms. Cunningham was a tenant of the subject premises. After Ms. Cunningham moved out, Mr. Qiu, a licensed attorney, failed to return her security deposit of $10,500 or the accrued interest on the deposit, as required by the Chicago Residential Landlord and Tenant Ordinance (RLTO) (Chicago Municipal Code § 5-12-010, *et. seq.* (amended July 28, 2010)).

¶ 4    Ms. Cunningham filed suit against Mr. Qiu seeking to recover her security deposit, accrued interest on the deposit, statutory penalties, and attorney fees and costs, pursuant to the relevant sections of the RLTO. Following a bench trial, the trial court granted judgment in favor of Ms. Cunningham in the amount of $35,955. The court subsequently granted plaintiffs' petition for attorney fees in the amount of $67,381. The court also granted plaintiffs' petition for costs and expenses in the amount of $2497.61. For the reasons that follow, we affirm the trial court's judgments.[1]

¶ 5                                    I. BACKGROUND

¶ 6    On July 29, 2014, Ms. Cunningham, with authority from her mother, entered into a non-standard "Residential Lease," which was drafted by Mr. Qiu. The lease term was for one year, beginning August 1, 2014, and ending July 31, 2015. The lease provided for monthly rent of $3500 payable on the first of each month, along with a security deposit of $10,500, and a move-in fee of $1000. Ms. Cunningham moved into the premises on August 1, 2014.

¶ 7    Among other provisions, the lease contained an inspection clause allowing Mr. Qiu to enter the premises between 7 a.m. and 9 p.m., upon twenty-four hours' notice. The lease also contained a provision concerning a pool table located in the basement of the premises. The provision provided that if the pool table was damaged or broken, the tenant would be required to advance

_____

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon entry of a separate written order.

$1500 for its repair. Mr. Qiu alleged that in August 2014, he inspected the premises and discovered that the pool table had been disassembled and removed without prior notice.

¶ 8    In September 2014, Mr. Qiu filed a complaint and an amended complaint (2014-M1-143740) under the Forcible Entry and Detainer Act (735 ILCS 5/9-101 *et. seq.* (West 2012)), alleging that Ms. Andrews breached the lease by disassembling the pool table and removing it without prior notice. Mr. Qiu did not seek possession of the premises, but rather, requested $5700 in damages to return and restore the pool table, along with attorney fees.[2]

¶ 9    By letter dated November 2, 2014, Mr. Qiu notified plaintiffs that he had elected to immediately terminate their lease and their rights of tenancy and possession, on the grounds that they had breached the lease by damaging the pool table. On November 6, 2014, Mr. Qiu emailed Ms. Cunningham, stating in part, that she was occupying and using the premises without a lease and may be subjected to eviction proceedings. From the record before us, it appears that, between November 2014 and April 2015, Mr. Qiu periodically conducted inspections of the residence, but otherwise he and Ms. Cunningham discussed nothing of substance.

¶ 10    In April 2015, Mr. Qiu and Ms. Cunningham exchanged a series of emails regarding the lease. In an email dated April 3, 2015, Mr. Qiu informed Ms. Cunningham that because she was subject to a month-to-month lease, he had decided to put the premises on the market in the coming days or weeks. In an email two days later, Mr. Qiu informed plaintiffs, "needless to say that you have been on a month-to-month rental, which, as a matter of law, may be terminated at any time with a 30-day prior notice." In an April 28, 2015 email, Mr. Qiu notified Ms. Cunningham that he had listed the premises for sale and if she desired to end her month-to-month lease, she was

---

[2]We note that "[t]he purpose of the Forcible Entry and Detainer Act (Act) is to provide a speedy remedy to allow a person who is entitled to the possession of certain real property to be restored to possession." *Wells Fargo Bank, N.A. v. Watson*, 2012 IL App (3d) 110930, ¶ 14 (citing *Rosewood Corp. v. Fisher*, 46 Ill. 2d 249, 251 (1970)). Here, Mr. Qiu did not seek possession of the subject premises.

welcome to do so, provided she gave him a 30-day notice.

¶ 11    In response, Ms. Cunningham's counsel sent an email on April 29, 2015, informing Mr. Qiu that, in light of his plans to sell the premises, Ms. Cunningham intended to surrender possession on May 1, 2015. Counsel requested that Mr. Qiu return Ms. Cunningham's security deposit within 45 days of her vacating the premises. Ms. Cunningham moved out on May 9, 2015.

¶ 12    That same month, Mr. Qiu's earlier filed forcible entry and detainer action proceeded to a bench trial and judgment was entered in Mr. Qiu's favor in the amount of $5700. Mr. Qiu was also granted leave to file a petition for attorney fees and costs.

¶ 13    Shortly after trial, Ms. Andrews filed a motion to vacate the judgment based on her discovery that Mr. Qiu had been in actual physical possession of the pool table the entire time his lawsuit was pending. On September 15, 2015, the trial court entered an order granting Ms. Andrews's motion to vacate the judgment and reduced Mr. Qiu's award to $875.

¶ 14    Mr. Qiu sold the property in November 2015. Attorney Olivia Cheng, who represented Mr. Qiu in the forcible entry and detainer action, filed a petition for attorney fees and costs. In December 2015, the trial court granted Attorney Cheng's fee petition in the amount of $1435. The court also awarded Ms. Andrews's counsel, Katrice M. Matthews, $1435 in attorney fees as a sanction against Mr. Qiu pursuant to Illinois Supreme Court Rule 219(c) (eff. July 1, 2002)[3], for his conduct in failing to disclose his possession of the pool table. The court subsequently entered a final order on March 10, 2016, denying Mr. Qiu's motion to reconsider the sanction ruling.

¶ 15    In February 2016, Ms. Andrews filed a complaint (2016-M1-103660) against Mr. Qiu

---

[3]Rule 219(c) provides that, in addition to the alternative remedies provided therein, "the court, upon motion or upon its own initiative, may impose upon the offending party or his or her attorney, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred as a result of the misconduct, including a reasonable attorney fee ***." Ill. S. Ct. R. 219(c) (eff. July 1, 2002).

seeking damages under the RLTO. Ms. Andrews alleged that Mr. Qiu violated the RLTO by failing to return her security deposit and accrued interest on the deposit.

¶ 16    In January 2017, Ms. Andrews filed a first amended complaint seeking to add her daughter, Ms. Cunningham, as a party plaintiff. In an order entered on April 26, 2017, the trial court dismissed the first amended complaint pursuant to Illinois Supreme Court Rule 103(b),[4] based on its finding that Ms. Andrews's counsel had failed to exercise reasonable diligence in effectuating service on Mr. Qiu. The RLTO action was dismissed without prejudice, based on the court's determination that the statute of limitations had not run at the time the action was filed.

¶ 17    On May 3, 2017, plaintiffs refiled their RLTO action in the law division of the circuit court of Cook County (2017-L-004486). This time, the complaint contained allegations against both Mr. Qiu and Attorney Matthews.[5]

¶ 18    Counts I, II, III, and V of the complaint were brought against Qiu and alleged violations of the following sections of the RLTO: section 170, in that Qiu did not attach a current and complete summary copy of the RLTO to the lease (count I); section 080(a)-(e), in that Qiu failed to return the security deposit and accrued interest on the deposit in a manner required by the RLTO (count II); section 101, in that Qiu did not attach a current and complete summary copy of the bed bug brochure to the lease (count III); and section 140(a)-(i), in that the lease drafted by Qiu contained numerous illegal provisions (count V). Chicago Municipal Code §§ 5-12-080(a)-(e), 5-12-101,

---

[4]Rule 103(b) provides in relevant part:
"If the plaintiff fails exercise reasonable diligence to obtain service on a defendant prior to the expiration of the applicable statute of limitations, the action as to that defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service on a defendant occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice as to that defendant ***." Ill. S. Ct. R. 103(b) (eff. July 1, 2017).
[5]Plaintiffs alleged that Attorney Matthews committed legal malpractice by, *inter alia*, failing to exercise reasonable diligence in obtaining service on Mr. Qiu and failing to include Ms. Cunningham as a party plaintiff. Attorney Matthews is not a party to this appeal.

5-12-140(a)-(i), 5-12-170.

¶ 19    Mr. Qiu filed a motion to dismiss the counts directed at him, citing Rule 103(b), and arguing that plaintiffs failed to exercise reasonable diligence in serving him and that the RLTO action was barred by the equitable doctrine of laches.[6] The trial court denied the motion to dismiss. In a written order, the court explained that "[l]aches is not available when there is an adequate remedy at law." The court determined that "Qiu cannot argue there was a lack of diligence of the party in asserting the claim when the claim did not accrue until after the alleged failure to comply with the 'RLTO' and the complaint was filed within the statute of limitations." The court concluded that "Qiu's assertion of prejudice is insufficient."

¶ 20    Mr. Qiu filed a motion to reconsider and, on February 27, 2018, the trial court dismissed counts I and III of plaintiffs' complaint with prejudice, pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2014)). The court found that the allegations in counts I and III were barred by the applicable statute of limitations. The court rejected Mr. Qiu's challenges to counts II and V of the complaint and ordered him to answer the allegations by March 20, 2018.

¶ 21    On March 9, 2018, prior to filing an answer, Mr. Qiu filed a motion pursuant to Illinois Supreme Court Rule 308(a) (eff. February 26, 2010), seeking an order from the trial court permitting an interlocutory appeal of the court's rulings on the motion to reconsider. On May 1, 2018, pursuant to Rule 308(a), the court denied Mr. Qiu's request for an interlocutory appeal.

¶ 22    Mr. Qiu subsequently filed an answer raising the following affirmative defenses: (1) plaintiffs owed unpaid rent for the month of May 2015 in the sum of $3500; (2) plaintiffs owed

---

[6]Laches is an equitable doctrine and affirmative defense "that will bar relief when, because of a plaintiff's unreasonable delay in asserting a right, the defendant has been misled or prejudiced or has taken a course different from what he or she would have otherwise taken." *Department of Natural Resources v. Waide*, 2013 IL App (5th) 120340, ¶ 19.

$875, plus costs pursuant to the court order entered in the forcible entry and detainer action; and (3) after plaintiffs vacated the premises, it was discovered that they caused certain property damage totaling $3411.16, for which plaintiffs were liable under the terms of the lease.

¶ 23     Mr. Qiu also filed a four-count counterclaim. Count I sought unpaid rent for the months of May, June, and July of 2015; count II sought $875 in damages, plus costs of $334, pursuant to the court order entered in the forcible entry and detainer action; count III sought payment for unpaid utilities for April and May of 2015, and for certain "lost property;" and count IV sought compensation for property damage and costs of repairs.

¶ 24     The trial court granted plaintiffs' motion to dismiss count II of the counterclaim based on its finding that Mr. Qiu was "attempting to impermissibly collect a debt on a judgment in another case," *i.e.*, the forcible entry and detainer action. The court granted plaintiffs' motion to strike the remaining affirmative defenses and granted Mr. Qiu leave to replead. Mr. Qiu filed an amended counterclaim seeking damages from plaintiffs for "abandonment."

¶ 25     Mr. Qiu filed amended affirmative defenses alleging that: (1) the claims plaintiffs were pursuing in their refiled RLTO lawsuit were barred by *res judicata* and judicial estoppel because a final judgment on the claims had been entered by the trial court in its order issued on April 26, 2017; (2) any duty he had under the RLTO to sublease or re-rent the premises after plaintiffs abandoned the premises was discharged due to property damage caused by plaintiffs; and (3) plaintiffs' claim for the security deposit has been partially satisfied by $1209, the total amount of the unpaid judgment of $875, plus costs of $334, obtained against plaintiffs in the forcible entry and detainer action.

¶ 26     Mr. Qiu next filed a motion for summary judgment. The trial court dismissed the motion on the grounds that Mr. Qiu's affidavit in support of the motion failed to comply with the

7

requirements of Illinois Supreme Court Rule 191(a) (Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013)), because the affidavit was "replete with statements, photographs and documents which have no foundation and are not within Qiu's knowledge."[7] The court also found that Mr. Qiu's motion for summary judgment raised "more issues in dispute than it resolves." The court determined there were unresolved issues of fact concerning whether: (1) the lease was a month-to-month tenancy; (2) Mr. Qiu failed to mitigate alleged damages by not reletting the premises; and (3) the security deposit was withheld in the first place.

¶ 27    On August 5, 2019, the trial court entered an order bifurcating plaintiffs' claims against Mr. Qiu from their claims against Attorney Matthews. The court stayed the proceedings against Attorney Matthews until after the conclusion of the trial against Mr. Qiu.

¶ 28    The matter proceeded to a bench trial on August 12, 2019. The plaintiffs called as witnesses Ms. Cunningham, Attorney Matthews, Mr. Qiu, and Mr. Qiu's realtor, Ms. Alice Tse. In addition to the trial testimony, numerous exhibits were admitted into evidence. Mr. Qiu called no witnesses during his case-in-chief and rested after the plaintiffs presented their case.

¶ 29    At the trial's conclusion, the court awarded plaintiffs $10,500 for the security deposit, $21,000 as a penalty for Mr. Qiu's failure to pay interest under the RLTO, $7000 as a statutory penalty, $1000 for the move-in fee, and included offsets of $3500 in unpaid rent for the month of May 2015, and $45 for a water bill, for a total judgment of $35,955.

¶ 30    On November 4, 2019, the trial court entered a final order granting plaintiffs' petition for attorney fees in the amount of $67,381, plus costs in the amount of $2497.61. The court denied

---

[7]Rule 191(a) provides in relevant part that:
"[a]ffidavits in support of and in opposition to a motion for summary judgment under section 2-1005 of the Code of Civil Procedure *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; *** shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Ill. S. Ct. R. 191(a).

Mr. Qiu's motion to reconsider and his appeal followed.

¶ 31                                    II. ANALYSIS

¶ 32     As an initial matter, we consider plaintiffs' argument that this appeal should be dismissed because the appendix to Mr. Qiu's appellate brief fails to comply with Illinois Supreme Court Rule 342(3) (eff. July 1, 2017), as it does not contain the "names of all witnesses and the pages on which their direct examination, cross examination, and redirect examination begin." Plaintiffs further contend that certain parts of the argument section of Mr. Qiu's brief do not comply with Illinois Supreme Court Rule 341(h)(7) (eff. Jan. 1, 2016), which provides in part that "[c]itation of numerous authorities in support of the same point is not favored." Plaintiffs also maintain that the arguments in Mr. Qiu's brief are difficult to follow and fail to flow directly from the claimed errors in his notice of appeal.

¶ 33     We agree that the appendix to Mr. Qiu's brief fails to comply with Rule 342(3), and that we could strike the brief and dismiss the appeal, as supreme court rules are not mere suggestions, but are compulsory. See, *e.g.*, *U.S. Bank Trust National Ass'n v. Junior*, 2016 IL App (1st) 152109, ¶ 17 (noting that supreme court rules are not mere suggestions but are compulsory). However, " '[t]he striking of an appellate brief, in whole or in part, is a harsh sanction and is appropriate only when the alleged violations of procedural rules interfere with or preclude review.' " *In re Detention of Powell*, 217 Ill.2d 123, 132 (2005) (quoting *Moomaw v. Mentor H/S, Inc.*, 313 Ill. App. 3d 1031, 1035 (2000)). We find that Mr. Qiu's failure to comply with Rule 342(3) does not interfere with or preclude our review of the trial court's decisions, "as we find the briefs and record sufficient to render a decision on the merits." *Gonzalez v. Pollution Control Board*, 2011 IL App (1st) 093021, ¶ 30.

¶ 34     We also agree that certain parts of Mr. Qiu's brief fail to comply with Illinois Supreme

Court Rule 341(h) (eff. Jan. 1, 2016), which requires parties' briefs to include cohesive arguments. However, we view dismissal in this particular circumstance to be unwarranted. Therefore, we decline to dismiss the appeal.

¶ 35                                    A. Motion to Reconsider

¶ 36    Turning to the merits, Mr. Qiu, who is proceeding *pro se*, contends the trial court erred and misapplied applicable law when it denied his motion to reconsider. He raises several arguments in support of this contention, each of which we address in turn.

¶ 37    In support of his argument that the trial court erred in denying his motion for reconsideration, Mr. Qiu first contends the court misapplied fundamental rules of contract law in finding that the one-year lease executed between the parties was amended to a month-to-month tenancy. The trial court found that by his conduct and written statements, Mr. Qiu had treated the lease as a month-to-month tenancy and was therefore estopped from asserting otherwise.

¶ 38    "The purpose of a motion to reconsider is to bring to the trial court's attention a change in the law, an error in the trial court's previous application of existing law, or newly discovered evidence that was not available at the time of the prior hearing or decision." *Horlacher v. Cohen, D.D.S.*, 2017 IL App (1st) 162712, ¶ 79. A trial court's ruling on a motion to reconsider is generally reviewed under an abuse of discretion standard. *Belluomini v. Zaryczny*, 2014 IL App (1st) 122664, ¶ 20. However, where, as here, the motion to reconsider only asks that the trial court reevaluate its application of the law to the case as it existed at the time of judgment, the standard of review is *de novo*. *Id*. In a similar manner, the construction and legal effect of a lease and provisions of the RLTO are questions of law, which are also reviewed *de novo*. *VG Marina Management Corp. v. Wiener*, 378 Ill. App. 3d 887, 891 (2008); *Plambeck v. Greystone Management & Columbia National Trust Co.*, 281 Ill. App. 3d 260, 266 (1996).

¶ 39    "A lease is a contract between the landlord and tenant and normal principles of contract interpretation apply." *Village of Palatine v. Palatine Associates, LLC*, 2012 IL App (1st) 102707, ¶ 45. The basic rules of contract interpretation are well settled. "The principal objective in construing a contract is to determine and give effect to the intention of the parties at the time they entered into the agreement." *Urban Sites of Chicago, LLC v. Crown Castle USA*, 2012 IL App (1st) 111880, ¶ 24. "To determine the intent of the parties, the court must look to the instrument itself, its purposes and the surrounding circumstances of its execution and performance." *Fleet Business Credit, LLC v. Enterasys Networks, Inc.*, 352 Ill. App. 3d 456, 469 (2004). If the language of a contract is clear and unambiguous, the intent of the parties must be determined solely from the language of the contract itself, which must be given its plain and ordinary meaning. *Richard W. McCarthy Trust v. Illinois Casualty Co.*, 408 Ill. App. 3d 526, 535 (2011). Where the words of the contract are clear and unambiguous, it should be enforced as written. *Id*.

¶ 40    At issue here is the modification clause contained in paragraph 32 of the lease, which provides that the lease "contains the entire agreements between the parties and *** shall not be modified, changed, altered or amended except by written amendment signed by all of the parties hereto." Mr. Qiu contends that the parties never agreed to amend or modify the terms of the lease and therefore the trial court erred and misapplied the rules of contract law in finding that the lease was amended from a one-year lease term to a month-to-month tenancy. The trial court found that through his conduct and written statements, Mr. Qiu waived or was estopped from relying on paragraph 32 of the lease to support his contention that the lease was not amended from a one-year lease term to a month-to-month tenancy.

¶ 41    "[P]arties to an existing contract may, by mutual assent, modify a contract provided that the modification does not violate the law or public policy." *Urban Sites of Chicago,* 2012 IL App

11

(1st) 111880, ¶ 37. "A modification of a contract is a change in one or more aspects of a contract that introduces new elements into the details of the contract or cancels some of them but leaves the general purpose and effect of the contract undisturbed." *Richard W. McCarthy Trust v. Illinois Casualty Co.*, 408 Ill. App. 3d 526, 533-34 (2011). Modification of a contract must satisfy all the criteria essential for a valid original contract, including an offer, acceptance, and consideration. *Id.* at 534. "A contract is validly modified if the party which did not propose the changes is shown to acquiesce in the modification through a course of conduct consistent with acceptance." *Maher & Associates v. Quality Cabinets*, 267 Ill. App. 3d 69, 78 (1994). "The intent of parties to modify a contract can be implied from their conduct if they do not continue to act according to the original terms of the contract." *Galindo v. City of Coffeyville*, 256 Kan. 455, 465-66 (1994).

¶ 42    Whether the terms of a written contract are modified by acts or conduct is a matter for the trier of fact, whose determination will not be disturbed unless it is contrary to the manifest weight of the evidence. *Sosin v. Hayes*, 258 Ill. App. 3d 949, 952 (1994). A finding is against the manifest weight of the evidence only when the opposite conclusion is apparent or the finding appears to be unreasonable, arbitrary, or not based on the evidence. *Vancura v. Katris*, 238 Ill. 2d 352, 374 (2010).

¶ 43    Here, evidence was presented that on November 2, 2014, Mr. Qiu informed plaintiffs that he had elected to immediately terminate their lease, and their rights of tenancy and possession of the premises, on the grounds that they breached the lease by damaging various items at the property. On November 6, 2014, Mr. Qiu emailed Ms. Cunningham informing her that she was occupying the premises without a lease and was subject to eviction proceedings.

¶ 44    The next year, Mr. Qiu sent an email to Ms. Cunningham on April 3, 2015, notifying her that because she was now on a month-to-month lease, he had decided to put the premises on the

market. On April 5, 2015, Mr. Qiu sent an email to plaintiffs stating in part, "needless to say that you have been on a month-to-month rental, which, as a matter of law, may be terminated at any time with a 30-day prior notice." In an email dated April 28, 2015, Mr. Qiu informed Ms. Cunningham that he had listed the premises for sale and that if she desired to end her month-to-month lease, she was welcome to do so, provided she gave him 30-day prior notice. On April 30, 2015, Mr. Qiu sent plaintiffs' attorney an email stating that her clients were occupying the premises on a month-to-month basis, and as a result, they were required to give 30-day notice in advance of their surrender of the premises.

¶ 45    Mr. Qiu contends that his emails do not demonstrate there was a valid modification of the lease because the parties signed nothing that purported to amend the lease. Mr. Qiu further contends that the plaintiffs always refuted his attempts to amend the terms of the lease. Modification of a contract cannot be done in an *ex parte* fashion or without the assent of the opposite party to the agreement. *Urban Sites of Chicago,* 2012 IL App (1st) 111880, ¶ 35. However, a party to a contract may be deemed to have ratified by acquiescence to the contractual modification, if by its conduct, it expresses its consent to the modification. *Maher,* 267 Ill. App. 3d at 78; *Corrugated Metals, Inc. v. Industrial Commission*, 184 Ill. App. 3d 549, 556 (1989). Here, plaintiffs' conduct indicates they acquiesced in the modification of the lease.

¶ 46    Mr. Qiu's emails demonstrate that after he terminated plaintiffs' one-year lease, he did not commence eviction proceedings against plaintiffs to recover possession of the premises, but rather began treating them as month-to-month tenants. Ms. Cunningham remained in possession of the premises after the lease was terminated and she continued to pay Mr. Qiu monthly rent, which he accepted. Ms. Cunningham's continued occupancy of the premises after the lease was terminated, coupled with Mr. Qiu's subsequent acceptance of monthly rental payments, created a

month-to-month tenancy. "Acceptance of monthly rental payments by a landlord will generally create a month-to-month tenancy." *Klitzka v. Hellios*, 348 Ill. App. 3d 594, 598 (2004); see also *A.O. Smith Corporation v. Kaufman Grain Co.*, 231 Ill. App. 3d 390, 399 (1992). The evidence demonstrates there was mutual assent to modification of the lease.

¶ 47    Mr. Qiu argues that his emails constituted settlement discussions concerning the security deposit. We disagree. A communication qualifies as a settlement offer under Illinois Rule of Evidence 408, if it is "made in compromise negotiations regarding the claim." Ill. R. Evid. 408(a)(2) (eff. Jan. 1, 2011). Mr. Qiu's emails contain no offers of compromise regarding the security deposit and do not qualify as settlement offers or negotiations under Rule 408.

¶ 48    Mr. Qiu next contends that the modification of the lease was invalid for lack of consideration. Again, we disagree. Although modification of a contract generally must be supported by consideration to be valid, our courts have determined that a contract modification which has been executed by the parties will not be disturbed by the court, even in the absence of consideration. *Corrugated Metals,*184 Ill. App. 3d at 556; *Terminal Freezers, Inc. v. Roberts Frozen Foods*, 41 Ill. App. 3d 981, 988-89 (1976). "[A] lease is executed when the leasehold interest is transferred to the lessee." Grant Gilmore, *The Assignee of Contract Rights and His Precarious Security*, 74 Yale L.J. 217, 250 n. 69 (1964).

¶ 49    Moreover, the evidence shows that modification of the lease was supported by sufficient consideration. "An act or promise that benefits one party or is a detriment to the other party is consideration sufficient to support a contract." *In re Marriage of Tabassum*, 377 Ill. App. 3d 761, 770 (2007). In this case, plaintiffs provided sufficient consideration when they waived their option to renew the one-year lease and instead ratified and acquiesced to a month-to-month tenancy, which was terminable at any time after being served with a 30-day notice. Principles of waiver

apply to options to renew a lease. *Steven W. Barrick & Assoc v. Witz*, 147 Ill. App. 3d 615, 619 (1986). In sum, we do not believe the trial court's finding, that the original one-year lease was amended to a month-to-month tenancy by the conduct and written statements of Mr. Qiu, is against the manifest weight of the evidence.

¶ 50                                    B. Counterclaim for Unpaid Rent

¶ 51    Mr. Qiu filed a counterclaim for unpaid rent for the months of May, June, and July of 2015. At the trial, plaintiffs' counsel argued that, under the "mend-the-hold" doctrine, Mr. Qiu should be estopped from receiving rent for the months of June and July 2015 because he originally only demanded rent for the month of May and did not demand rent for June and July until he filed his counterclaim in 2018.

¶ 52    Following closing arguments, the trial court determined that Mr. Qiu was not entitled to rent for the months of June and July 2015. The court, however, ruled that plaintiffs were liable for the rent which became due May 2015, because Ms. Cunningham did not vacate the premises until the ninth of that month.

¶ 53    "The 'mend-the-hold' doctrine is a common law doctrine that limits the right of a party in a contract suit to change its position mid-litigation." *Montgomery Ward & Company, Inc., v. Home Insurance Co.*, 324 Ill. App. 3d 441, 451 (2001). "Although the doctrine is not the same as equitable estoppel, it is similarly equitable in nature, rooted in a concern for fairness." *First Bank of Highland Park v. Sklarov*, 2019 IL App (2d) 190210, ¶ 15. The doctrine "prohibits a party who has repudiated a contract on one ground from changing his position after litigation has begun and thus 'mend[ing] his hold.' " *Smith v. Union Automobile Indemnity Co.*, 323 Ill. App. 3d 741, 745 (2001) (quoting *Larson v. Johnson*, 1 Ill. App. 2d 36, 39-40 (1953)). Our courts have declined to apply the doctrine when the party asserting it fails to make a showing of detriment, unfair surprise,

or arbitrariness. See, *e.g.*, *Grinnell Mutual Reinsurance Company v. LaForge*, 369 Ill. App. 3d 688, 699-700 (2006).

¶ 54　We agree with Mr. Qiu that these elements appear to be absent in this case. However, this does not necessarily warrant reversal. Even if the trial court based its decision on an improper ground, we can affirm the decision on any basis supported by the record. *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 17.

¶ 55　In this case, the record shows that after Mr. Qiu terminated plaintiffs' one-year lease, he treated plaintiffs as month-to-month tenants. In an April 28, 2015 email, Mr. Qiu notified Ms. Cunningham that he had listed the premises for sale, and if she desired to end her month-to-month lease, she was welcome to do so, provided she gave him a 30-day notice. Ms. Cunningham moved out of the premises on May 9, 2015. After the lease was amended to a month-to-month lease and Ms. Cunningham vacated the premises, she was no longer liable to pay rent for any months thereafter. Therefore, Mr. Qiu was not entitled to rent for the months of June and July.

¶ 56　　　　　　　　　　　　C. Section 080 of the RLTO

¶ 57　Mr. Qiu next contends the trial court erred in finding that he violated the RLTO by not returning plaintiffs' security deposit. A security deposit is money a tenant deposits with a landlord as security for the tenant's performance of the lease terms and it remains the tenant's property which the landlord holds in "trust" for the benefit of the tenant. *Starr v. Gay*, 354 Ill. App. 3d 610, 613 (2004).

¶ 58　Section 080 of the RLTO governs security deposits. See, *e.g.*, *Salier v. Delta Real Estate Investments, LLC*, 2020 IL App (1st) 181512, ¶ 1 (noting that section 080 of the RLTO addresses security deposits). In construing a municipal ordinance such as the RLTO, we employ the same principles of construction we employ in construing a statute. *In re Application of County Collector*

*of Kane County*, 132 Ill. 2d 64, 72 (1989). "The fundamental rule in interpreting an ordinance remains giving effect to the intent of the legislature." *American National Bank v. Powell*, 293 Ill. App. 3d 1033, 1038 (1997). "The best evidence of this intent comes from the language of the ordinance itself." *Id*. We review *de novo* the construction of an ordinance. *Ruisard v. Village of Glen Ellyn*, 406 Ill. App. 3d 644, 661-62 (2010).

¶ 59    Section 080(c) of the RLTO provides in relevant part that:

> "A landlord who holds a security deposit or prepaid rent pursuant to this section for more than six months shall pay interest to the tenant accruing from the beginning date of the rental term specified in the rental agreement at the rate determined in accordance with Section 5-12-081 for the year in which the rental agreement was entered into." Chicago Municipal Code § 5-12-080(c) (amended July 28, 2010).

¶ 60    Section 080(d) provides in relevant part that:

> "The landlord shall, within 45 days after the date that the tenant vacates the dwelling unit or within seven days after the date that the tenant provides notice of termination of the rental agreement pursuant to Section 5-12-110(g), return to the tenant the security deposit or any balance thereof and the required interest thereon." Chicago Municipal Code § 5-12-080(d) (amended July 28, 2010).

¶ 61    Violations of sections 080(c) and (d) are addressed by section 080(f)(1) which provides that:

> "[I]f the landlord fails to comply with any provision of Section 5-12-080(a)-(e), the tenant shall be awarded damages in an amount equal to two times the security deposit plus interest at a rate determined in accordance with Section 5-12-081. This subsection does not preclude the tenant from recovering other damages to which he

17

may be entitled under this chapter." Chicago Municipal Code § 5-12-080(f)(1) (amended July 28, 2010).

¶ 62    The record in this case demonstrates that Mr. Qiu violated section 080(c) when he failed to pay interest on the security deposit. In fact, the lease contained a clause providing that the security deposit was returnable without interest, which is in direct contravention of section 080(c). Mr. Qiu also violated section 080(d) by failing to return the security deposit.

¶ 63    Mr. Qiu argues that he did not violate section 080(d) where he withheld the security deposit as a set-off against property damage that the plaintiffs caused to the premises. He also contends that the May 2015 judgment in his favor, for $5700 for damages to the pool table, provided him with an additional good-faith reason for withholding the security deposit.

¶ 64    Section 080(d)(2) of the RLTO allows a landlord to withhold or deduct part of a tenant's security deposit to compensate for property damage when the landlord delivers or mails to the tenant, within 30 days, an itemized statement of the damages along with the estimated or actual cost of repair or replacement, attaching copies of receipts. Chicago Municipal Code § 5-12-080(d)(2) (amended May 14, 1997).

¶ 65    Here, there was no evidence or testimony indicating Mr. Qiu made any repairs to the premises within 30 days of the move-out date of May 9, 2015. In addition, the May 2015 judgment does not provide Mr. Qiu with a good-faith reason for withholding the security deposit as the trial court vacated the judgment after the court was made aware that Mr. Qiu was in actual physical possession of the pool table the entire time his lawsuit was pending.

¶ 66    Mr. Qiu contends he had an additional good-faith reason for withholding the security deposit as plaintiffs vacated the property without paying rent. This too is not a ground upon which Mr. Qiu can avoid application of the RLTO. Section 080(d)(2) of the RLTO applies to situations

18

where the security deposit is withheld based on property damage. To avoid having to comply with section 080(d)(2) of the RLTO, a landlord must present some evidence of a good faith dispute to avoid a presumption that the security deposit was withheld based on a claim of property damages. *Turner v. 1212 S. Michigan Partnership*, 355 Ill. App. 3d 885, 895 (2005). In this case, section 080(d)(2) of the RLTO applies, as there is no dispute that the issues pertaining to the security deposit involve property damage. The record shows that Mr. Qiu sent an email to Ms. Cunningham on June 3, 2015, indicating that he was withholding the security deposit as a set-off against property damage to the premises.

¶ 67    Our supreme court has instructed that a landlord's duty to comply with the RLTO is absolute and without exception. *Lawrence v. Regent Realty Group, Inc.*, 197 Ill. 2d 1, 9 (2001) (noting that a landlord's duty to comply with the RLTO is absolute). Mr. Qiu's arguments that he had good-faith reasons for withholding the security deposit are not persuasive.

¶ 68    In sum, the record shows that Mr. Qiu violated sections 080(c) and (d) of the RLTO by failing to pay interest on the security deposit and failing to return the security deposit. Accordingly, we find the trial court did not err when it awarded damages in an amount equal to twice the security deposit, as permitted pursuant to section 080(f)(1) of the RLTO.

¶ 69                              D. Sections 060 and 140 of the RLTO

¶ 70    Mr. Qiu next contends the trial court erred in awarding damages to plaintiffs due to his alleged violations of sections 060 and 140 of the RLTO. The court awarded damages under section 140, based on Mr. Qiu's attempts to enforce an attorney-fee provision contained in the written lease. The court awarded damages under section 060, based on Mr. Qiu's conduct in repeatedly entering the premises for inspection purposes, without sufficient notice. The court merged the damages resulting from these violations for a total amount of $7000. We examine each of Mr.

Qiu's claims of error in turn.

¶ 71                                   1. Section 140(f) of the RLTO

¶ 72    Section 140(f) of the RLTO prohibits attempted enforcement of a lease provision that requires a tenant to pay a landlord's attorney fees in a lawsuit arising out of the tenancy, except as specifically provided for by court rules, statute, or ordinance. Chicago Municipal Code § 5-12-140(f) (amended November 6, 1991). Paragraph 24 of the lease provides that the tenant shall be liable for all expenses incurred, including reasonable attorney fees. Mr. Qiu has not provided any court rule, statute, or ordinance allowing for such attorney fees. Mr. Qiu violated section 140(f) of the RLTO when he attempted to enforce paragraph 24 of the written lease. In his June 3, 2015 email to Ms. Cunningham, Mr. Qiu demanded attorney fees in the amount of $3000, in clear violation of section 140(f) of the RLTO.

¶ 73    Mr. Qiu contends the trial court erred in awarding attorney fees to plaintiffs due to his alleged violation of section 140(f) of the RLTO. He argues the award was barred pursuant to the doctrine of *res judicata*, in that the issue regarding attorney fees could and should have been raised and decided in the forcible entry and detainer action. We disagree.

¶ 74    "The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996). For the doctrine to apply, three requirements must be satisfied: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of causes of action; and (3) an identity of the parties or their privies. *Id.* at 335.

¶ 75    *Res judicata* does not apply here because there is no identity of causes of action between the forcible entry and detainer action Mr. Qiu filed against Ms. Andrews and the RLTO action

plaintiffs filed against Mr. Qiu. "A cause of action is defined by the facts which give rise to a right to relief." *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 46. Illinois courts have adopted the "transactional test" to determine whether two causes of action are identical for purposes of *res judicata*. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 310-12 (1998). Under the transactional test, courts consider whether the two actions arose from a single group of operative facts. *Id*. This depends on a pragmatic consideration of whether the facts are related in time, space, origin, or motivation and form a convenient trial unit. *Trackman v. Michela*, 2019 IL App (2d) 190131, ¶ 15. "When new facts or conditions intervene before a second action, establishing a new basis for the claims and defenses of the parties respectfully, the issues are no longer the same, and the former judgment cannot be pleaded as a bar in a subsequent action." *Hayashi*, 2014 IL 116023, ¶ 46.

¶ 76    Here, the facts and conditions involved in the forcible entry and detainer action filed by Mr. Qiu are unrelated in time or motivation with the facts involved in the RLTO action filed by plaintiffs. In the forcible entry and detainer action, the trial court awarded Ms. Andrews' counsel attorney fees as a sanction against Mr. Qiu pursuant to Illinois Supreme Court 219(c). In this case, the trial court awarded attorney fees to plaintiffs based on Mr. Qiu's violation of section 140(f) of the RLTO.

¶ 77    Mr. Qiu next contends that plaintiffs' claims under section 140(f) of the RLTO are time barred by the two-year statute of limitations for penal statutes. Our supreme court has determined that section 080(f)(1) of the RLTO, which pertains to the return of security deposits, is a statutory penalty, and thus subject to the two-year statute of limitations for penal statutes. *Landis v. Marc Realty, LLC*, 235 Ill. 2d 1, 15 (2009). Mr. Qiu argues that plaintiffs did not plead that they discovered their causes of action under the RLTO until after the termination of the lease, and

therefore their claims under section 140(f) are barred by the two-year statute of limitations. Again, we disagree.

¶ 78     A cause of action "accrues" for purposes of calculating the limitations period when facts exist that authorize the bringing of the action. *Henderson Square Condominium Association v. Lab Townhomes, LLC*, 2015 IL 118139, ¶ 52. Our courts have adopted the discovery rule to ameliorate the potential harsh effects of a mechanical application of the statute of limitations that would result in it expiring before a plaintiff knows of their cause of action. *Id*. "The discovery rule postpones the start of the limitations period until a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused." *Id*. "For purposes of the discovery rule, a party has 'knowledge' an injury was wrongfully caused so as to commence the running of the limitations period only when the injured person possesses sufficient information to alert a reasonable person of the need to inquire as to whether the cause of injury is actionable." *Wilson v. Devonshire Realty of Danville*, 307 Ill. App. 3d 801, 805 (1999). At that point, the party is under an obligation to inquire further to determine whether an actionable wrong has been committed. *Henderson Square Condominium Association*, 2015 IL 118139, ¶ 52. When the facts are undisputed and only one conclusion can be drawn from them, this court may decide the issue as a matter of law. *Lane v. Deutsche Bank*, 2015 IL App (1st) 142968, ¶ 25. Here, the facts are undisputed, and therefore we may decide, as a matter of law, whether plaintiffs' RLTO claims are barred by the statute of limitations.

¶ 79     In addressing this matter, we consider the following facts to be significant. Plaintiffs executed the lease on July 30, 2014. Plaintiffs vacated the premises on May 9, 2015. The statute of limitations would not have accrued until plaintiffs knew or should have known of the injury.

¶ 80     Section 080(d) provides in relevant part that:

"The landlord shall, within 45 days after the date that the tenant vacates the dwelling unit or within seven days after the date that the tenant provides notice of termination of the rental agreement pursuant to Section 5-12-110(g), return to the tenant the security deposit or any balance thereof and the required interest thereon." Chicago Municipal Code § 5-12-080(d).

¶ 81    Mr. Qiu's failure to return the security deposit could not have been known until 45 days after the plaintiffs vacated the premises on May 9, 2015. The cause of action relating to the security deposit accrued 45 days after the plaintiffs vacated the premises—on June 23, 2015. Therefore, the statute of limitations expired on June 23, 2017. Plaintiffs refiled their RLTO action on May 3, 2017, in the law division of the circuit court of Cook County (2017-L-004486). Accordingly, we find that the trial court correctly determined, as a matter of law, that the RLTO claims brought against Mr. Qiu were filed within the applicable statute of limitations.

¶ 82                              2. Section 060 of the RLTO

¶ 83    Section 060 of the RLTO provides, in part, that:

"If the landlord makes *** a lawful entry in an unreasonable manner or makes repeated unreasonable demands for entry otherwise lawful, but which have the effect of harassing the tenant, the tenant may obtain injunctive relief to prevent the recurrence of the conduct, or terminate the rental agreement pursuant to the notice provisions of Section 5-12-110(a)." Chicago Municipal Code § 5-12-060.

¶ 84    Section 050 of the RLTO provides, in part, that except under certain limited circumstances, "the landlord shall give the tenant notice of the landlord's intent to enter of no less than two days." Chicago Municipal Code § 5-12-050 (amended November 6, 1991).

¶ 85    In this case, Mr. Qiu admitted that he conducted at least eight inspections during the seven

23

months Ms. Cunningham rented and lived on the premises. The trial court determined that Mr. Qiu violated section 060 of the RLTO when he conducted "four perhaps even five inspections that were without proper notice under the Act." The court added that "even if the inspections didn't occur, those still constitute attempts to enforce a provision, meaning within 24 hours, which is what the lease says. Those were attempts to enforce that provision."

¶ 86    Mr. Qiu argues that plaintiffs waived their claims regarding his inspections of the premises when they signed the lease and thereby consented to the inspections. Again, we must disagree. A tenant does not waive or relinquish their rights to receive proper notice of property inspections under the RLTO by signing a lease when the lease violates the plain language of the RLTO. Chicago Municipal Code § 5-12-140(a) (added November 6, 1991) ("[E]xcept as otherwise specifically provided by this chapter, no rental agreement may provide that the landlord or tenant: [a]grees to waive or forego rights, remedies or obligations provided under this chapter."). The trial court did not err in awarding damages to plaintiffs for Mr. Qiu's violations of sections 060 and 140 of the RLTO.

¶ 87                                    E. Move-In Fee

¶ 88    Mr. Qiu argues the trial court erred in awarding plaintiffs the return of their $1000 move-in fee. The trial court determined that the move-in fee was "nothing more than a disguised security deposit." The court stated there was no evidence that Mr. Qiu "provided any service for the additional $1,000." The court added that "[i]f there is an issue with respect to damages as a result of moving in or moving out, that would come out of the security deposit. The security deposit is specifically designed to allow the landlord to recover in the event of damages to the property by the tenant." We agree with the court's reasoning and its decision.

¶ 89    A security deposit is money a tenant deposits with a landlord as security for the tenant's

24

performance of the lease terms and it remains the tenant's property which the landlord holds in "trust" for the benefit of the tenant. *Starr,* 354 Ill. App. 3d at 613. This court has previously held that a move-in fee of $350 was not considered a security deposit where the landlord explicitly disclosed that the fee was nonrefundable and the fee appeared to be inadequate to secure a tenant's performance under the terms of the lease, including the failure to pay rent or repair damages to the premises. *Steenes v. Mac Property Management, LLC*, 2014 IL App (1st) 120719, ¶ 23.

¶ 90    The case at bar is factually distinguishable from *Steenes*. In *Steenes*, the lease did not provide an amount for the security deposit. *Steenes*, 2014 IL App (1st) 120719, ¶ 4. In this case, the lease provided for a security deposit in the amount of $10,500. In *Steenes*, the plaintiff did not allege that she paid a security deposit. *Id*. In this case, the plaintiffs paid the security deposit.

¶ 91    Regarding the move-in fee, unlike *Steenes*, where the move-in fee was $350, we cannot say that the $1000 move-in fee is an inadequate amount to repair certain damages to the premises. More importantly, contrary to *Steenes*, there is no language in plaintiffs' lease indicating that the move-in fee is nonrefundable.

¶ 92                         F. Petition for Attorney Fees

¶ 93    Mr. Qiu next contends the trial court erred in denying his motion for leave to file a fee petition. Mr. Qiu argues that since the court allowed him to retain the May 2015 rent as a set-off against the security deposit, he was a "prevailing party," entitled to attorney fees. Mr. Qiu argues the court erred in finding that he was not a prevailing party.

¶ 94    Section 180 of the RLTO authorizes a trial court to award attorney fees to the "prevailing plaintiff," not the prevailing party. Chicago Municipal Code § 5-12-180 (added November 6, 1991); *Trutin v. Adam*, 2016 IL App (1st) 142853, ¶ 32. Mr. Qiu was not a plaintiff in this action, but he did file a counterclaim raising a claim under the RLTO. Mr. Qiu, however, fails to cite to

or provide any support for the proposition that the circuit court's ruling—allowing him to retain $3500 in March 2015 rent as a setoff against the security deposit—would qualify him as a "prevailing plaintiff" for the purposes of attorney fees under section 180. Simply stated, in the context of this case, we are hard pressed to view Mr. Qiu as a "prevailing plaintiff." Therefore, we hold that the circuit court did not err in denying Mr. Qiu's motion for leave to file a fee petition.

¶ 95                                G. Mitigation of Damages

¶ 96    Mr. Qiu contends that plaintiffs failed to meet their burden of proof that he failed to mitigate his property damages after plaintiffs abandoned the premises. Section 9-213.1 of the Code of Civil Procedure (735 ILCS 5/9-213.1 (West 2010)), which governs forcible entry and detainer proceedings, provides that "a landlord or his or her agent shall take reasonable measures to mitigate the damages recoverable against a defaulting lessee." Section 130(e)(3) of the RLTO provides, in relevant part, that "[i]f the tenant abandons the dwelling unit, the landlord shall make a good faith effort to re-rent it at a fair rental, which shall be the rent charged for comparable dwelling units in the premises or in the same neighborhood." Chicago Municipal Code § 5-12-130(e)(3) (amended November 24, 2020).

¶ 97    "The landlord bears the burden of proving that it complied with the statutory duty of mitigation." *Danada Square, LLC v. KFC National Management Co.*, 392 Ill. App. 3d 598, 608 (2009). If a landlord cannot show that it took reasonable steps to mitigate its damages, then "losses which reasonably could have been avoided are not recoverable." *Id.*

¶ 98    In this case, Mr. Qiu testified that there was extensive damage to the premises which prevented him from reletting the premises. However, the record reveals that Mr. Qiu did not provide the trial court with any bills, receipts, or similar documents to support alleged damages to the premises. Mr. Qiu also did not present any evidence that he attempted to relet the premises. In

26

fact, Mr. Qiu's realtor testified that she was hired to sell the premises, not to relet the property. The premises was sold in November 2015. We find the trial court did not err in concluding that Mr. Qiu failed to meet his burden of proof establishing that he mitigated the alleged damages to the premises.

¶ 99                             III. CONCLUSION

¶ 100    For the foregoing reasons, we affirm the judgments of the trial court in this RLTO action.

¶ 101    Affirmed.